*281 Opinion of the Court,
by Ch. J. Boyle.'
THIS is an appeal taken by the defendant from judgment for the plaintiff, in an action of detinue for slaves.
The questions of law which we deem material to be discussed, be thus stated:
1. Whether, where a party has been in adverse session of slaves for five years, he becomes thereby vested, in virtue of the statute of limitations, with such a right as to enable him to recover them of the former proprietor, who may have since obtained the possession?
2. Whether, where the adverse possession has been held in another state, the party can recover, without showing that by the laws of that state, such possession would give him a right to do so?
1. The first of these questions was decided in the affirmative by this court, in the case of Thompson vs. Caldwell, 3 Litt. Rep. 136; and for that decision we had the authority of the unanimous opinion of the court of appeals of Virginia, in the case of Newberry’s adm’rs. vs. Blakey, 3 Hen. & Mun. 55, and of the supreme court of the United States, in the case of Brent vs. Chapman, 5 Cranch, 358. Highly exalted, however, as those tribunals are, and justly respected as their opinions entitled to be, they could not, we readily admit, justify the decision of this court, if it be erroneous in principle and repugnant to the established rules of law; and that it is so, is contended on the part of the appellant in case, because, as it is asserted, the statute of tions bars the remedy only and does not affect the right, and, therefore, it is inferred, that if the former proprietor, after the lapse of five years, obtains the possession of slaves, he will be remitted to his right, and may insist upon it in defence, although he had no remedy recover thorn
. Were the premises of this argument true, we should have no hesitation in assenting to the correctness of conclusion; but we cannot admit the truth of the mises.- On the contrary, we assert that the remedy *282 canriot be taken away or destroyed by the statute of limitations, without taking away or destroying the right.
The adverse possession of slaves held by a .person out of this state,' cannot prevent the statute of limitations from running.
The statute -of this state, and not that of any ether, must be the rule with respect to the time in which an action •may he broH ¡in this country.
In making this assertion, however, we must be understood to mean the legal right, as well as the legal remedy; for it is in that sense only that these terms must be used in the argument employed on the part of the appellant, to avail him any thing, and understanding the terms in this limited sense, it is perfectly clear, that where there is no remedy, there is no right. The legal remedy may, no doubt, be modified or changed., without destroying the legal right, or even impairing it, where the remedy, in its new shape, is not impaired; but wherever the remedy is destroyed or impaired, the legal right must be destroyed or impaired. The very idea of a legal right is, that it is one which is enforced and protected by law; and ás this can only be done by the remedy, the coercive'means, whatever they may be, which the law affords for that purpose, it is plain that no one can have a legal fight in that which another may take and apply to his use, and for doing so, the law will afford no redress. The legal right and the legal remedy are, therefore, correlative, correspondent and commensurable. The former implies the existence of the latter, and the latter implies' the existence of the former,-and neither can exist without the other. Hence it is, that we are informed by Blackstone, and other elementary writers, “that wherever there is a legal right, there is a legal remedy,” and “that the want of right and the want of remedy, are the same thing.” These propositions are not, indeed, denied by. those who controvert the doctrine we are urging; but, strange as it may appear, while they admit these propositions to be true, they at the same time assert, that their converse is not so. But surely, if the remedy may, in any case, be taken away or destroyed, and the legal right remain, ¡there would then be a case, in which there would be a legal right without a legal remedy, and it could not be true, that wherever there is a legal right, there is a le:gal remedy. And what notions of identity must they ■entertain, who, at the same time they tell us that “ it may be truly and justly said, that the want of fight and the want of remedy are the same thing,” affirm “ that the want of remedy and the want of right áre not the same thing?” If the want of right is the same thing as the want of remedy, it is self-evident, that the want of *283 remedy must be the same thing as the want ef right, and to affirm that it is not, is not less, absurd than to affirm that the same thing may be, and not be, at the same time. With such reasoners as these, we cannot enter the lists .of controversy.,' They must be left to themselves, arid, with Lord Coke, we can only say' to them, 11 contra negantem principia non est disputandum.”— Co. Lit. 67 a. '
But the principle that the abrogation or destruction' of the remedy, abrogates or destroys- the legal right,, does not exist in theory only, but has been practically-asserted in England, ever since the existence of. the statute of limitations in that country. By that statute, an entry upon land can only be made within twenty years after the right accrues, and, of course,san action-of ejectment, which is founded upon the right of entry,, cannot be maintained for the recovery of the possession, after that period has elapsed. Under that provision of the statute, it was ruled in. the case of Stokes vs. Berry, 1 Salk. 421, “that if A. has had the possession of land adversely for twenty years, and then B. gets possession, upon which A. is put to his ejectment, though A. is-plaintiff, yet the possession for twenty years, shall be a. good title in him, as if he had still been in possession;, because, a possession for twenty years is .like a descent, which tolls entry, .and gives a. right of possession which is sufficient to maintain an ejectment.” The same-point was decided in the case of Atkins vs. Hord, 1 Burrow, 119; and in that case, Lord Mansfield, in delivering the opinion of the court, emphatically says, “twenty years adverse possession, is a positive title• to the defendant.- It is not a bar to the action or remedy of the plaintiff only; but takes away his right■ of possession..”— Again : It is provided by the statute of limitations in-England, that a writ of right, the highest remedy known to the law for the recovery of real estate, can-only be brought upon the seizin or possession of the demandant or his ancestor, within sixty years; and,, as under the-limitation for bringing an action of ejectment, an adverse possession for twenty years, is held, not only to bar the remedy, but to take away the right of possession; so under the limitation for bringing a writ of right, it is. held that a possession of sixty years, is “hot only a bar to-the action or remedy,-but takes away the right of property and vests it in the person- thus seized. “ So that *284 the possession of land,” as Blackstone observes, “in fee simple, uninterruptedly for three score years, is at present a sufficient title against all the world, and cannot be impeached by any dormant claim whatsoever.” 4 Tuck. Black. Com. 196.
We may, therefore, fairly conclude, we apprehend, that the statute of limitations is not only a bar to the remedy, but that it takes away the legal right.
We are aware that there are cases, in which a natural or moral right, as well as a legal right, may exist, as in the cases of contracts and of personal chattels, which are the products of man’s own creative industry. In such cases, it is clear, that the statute of limitations, though it may bar the remedy, and thereby take away the legal right, cannot affect the natural or moral right; for the latter is not like the former, the creature of civil law, but exists by the laws of nature, which no human laws can abrogate or destroy.
Hence, judges and jurists have not unfrequently used the expression, “that the statutes of limitation, affect the remedy, but not the right;” an expression which must necessarily be ambiguous, from the ambiguity of the term right; but which ought always to be understood to be used with reference to the natural or moral right. The natural or moral right, even where the legal right is abrogated or extinguished, is of high respect in the estimation of law. It is held to be a sufficient consideration for a promise to pay a debt barred by the statute of limitations, and although it never can, in itself, where the legal right is extinct, or does not exist, be the ground of an action, it may in many cases, constitute an availing defence, as in the case of contracts within the statute of frauds; and we will not say that it might not do so, in a case where the former proprietor has, after the lapse of five years, gained the possession of a personal thing, which is the fruit of man’s own creative industry, and is, therefore, by the laws of nature, the subject of property. But with respect to the right to lands, it is acknowledged to be founded in positive law only, and, of course, can only be denominated a civil or legal right, in contradistinction to a natural or moral right. When, therefore, the remedy is gone; when the law ceases to afford the means to enforce and protect the right, the right itself necessarily ceases to exist. The right to slaves evidently stands upon the same foundation.
*285 No man can, by the laws of nature, have dominion over his fellow-man; and property in slaves, therefore, can only exist where the necessary means is afforded by law to enforce the right of the master, as well against the slaves themselves as against others. Thus, where a master takes hisslave from one slave-holding state to another, his right will remain; because, by the laws of the state to which the slave is taken, a remedy is afforded to enforce and protect the master’s right; and so if the slave escapes into a non-slaveholding state, the right of the master will still remain, not because the laws of such state afford a remedy, but because the constitution and laws of the United States give the means of reclaiming him. But if the master voluntarily removes the slave to such non-slaveholding state, or if the slave escapes into a foreign country, which does not tolerate slavery, the master’s right, so long as the slave remains there, is gone; because he has no remedy to enforce or protect it. It results, then, that the statute of limitations, by taking away the remedy, takes away the right to slaves.-
If it be asked, how the right becomes vested in the person who has had the adverse possession of slaves for five years, so as to enable him to recover them, we answer, because possession is alone a right, which the law gives a remedy to enforce and protect, against all persons having no right, and is, of course, sufficient to authorize a recovery against the former proprietor, as well as against any other, the only right which he had being abrogated by the statute of limitations.
We are bound, therefore, to respond in the affirmative to the first question propounded, and the circuit court having so decided, its decision is correct.
2. The second question involves no difficulty. It is perfectly clear, that the adverse possession of slaves being held by a person out of this state, cannot prevent the statute of limitations from running; for the statute, contains no saving of the right to maintain an action, because the thing possessed, or the person having the possession, is out of the state; and it must, therefore, operate as a bar to the recovery of the slaves, whether the possession was held in this or in any other state; for, as has been repeatedly decided by this court, the statute of limitations of this state, and not that of any other, must be the rule with respect to the time in which *286 an action may be brought in this country. 2 Bibb 207. —The circuit court haying so decided this question, the decision is also correct.
Besides these questions, there is one which arises out of the refusal of the court to grant a new trial, upon the evidence given in the cause; but with respect to»' this, it is sufficient to remark, that the evidence is of a character which would not justify the interposition of this court to award a new trial, in opposition to the opinion of the circuit court. ■
The judgment must be affirmed with costs.