## Cargile *vs* Harrison &c.

### ERROR TO THE WAYNE CIRCUIT.

*Limitation. Distribution. Parties.*

JUDGE SIMPSON delivered the opinion of the Court.

JAMES Cargile died in 1830. He had been twice married. By his will he devised two female slaves to his last wife during her life, and after her death to her

children.    Since his death, the slaves, with the assent of the executor, have been held and claimed by the devisees as their own property under the will.    One of the slaves has had five children, and the other one has had three.    The testator at the time of his death resided in the State of Tennessee, where probate of his will was made, and where his widow continued to reside until her death, which occurred some five years after the death of her husband, and her children still remain residents of that State.

The testator had six children by his first marriage. In the year 1845, John Cargile, one of the children, brought this suit in chancery; part of said slaves, and William H. Harrison, the guardian of the children by the second marriage, being in this State at the time.

1. The complainant claims the slaves as being the property exclusively of the children of the first marriage, having, as he alleges, been given by his maternal grandfather to his mother during her life, and to her children after her death.

2. He attempts to assail the testator's will, upon the ground that its execution was fraudulently obtained by the exercise of undue influence on the part of his last wife.

3. Two of the children of the last marriage having died intestate and without issue, he claims an interest in their part of the slaves, if it should appear that they belonged to them at the time of their death, and not to the children of the testator's first wife.

1. The character of the gift of the slaves to the complainant's mother does not appear.    The testator, in his lifetime, on some occasions, admitted the slaves to belong to her children, and at other times claimed them as his own.    The probability is, that he supposed they belonged to the children, inasmuch as they came by their mother.    The testimony does not show that the original gift was limited to a life estate in the mother, with a remainder over to her children after her death. In the absence of all evidence on this point, it cannot be inferred merely from the fact that the testator sometimes recognized the slaves as belonging to his first

wife's children, that from the nature and terms of the original gift to their mother, they had a right or title to the property.

But had such a right been fully established by competent testimony, it was barred by the statute of limitations at the institution of the present suit. The slaves had been held by the devisees adversely to the complainant for twelve or thirteen years after the death of the testator. This will, which was of record, and consequently made the fact notorious, showed that he had devised them as his own property, in opposition to the claim now asserted in favor of the children of the first wife. The circumstance that the slaves were all the time, until shortly before the commencement of the suit, in the State of Tennessee, does not prevent the operation of the statute. The case does not come within any of its exceptions; nor is there any good reason why the statute should not apply. The suit might have been brought at any time where the property was at the testator's death, and where the adverse claimants have ever since continued to reside. *Stanley* vs *Earl*, (5 *Litt.* 281.)

2. There is an entire failure of proof in relation to the alleged fraud in procuring the execution of the will by the testator, which is positively denied by the defendants, so that it is unnecessary to decide whether, under the circumstances of the case, probate of the will having been made in the State of Tennessee, where the testator was domiciled at the time of his death, the Courts of this State would have jurisdiction of the matters involved in this question; or whether the question could be made collaterally in this suit, or only in a direct proceeding, for the purpose of impeaching the will.

3. The death of two of the children by the last marriage is not controverted; but to defeat the complainant's claim to a share of their interest in the slaves, the defendants rely upon the statute of limitations of the State of Tennessee, which bars a suit after three years have elapsed from the time the cause of action accrued. One of the children died in 1839, the other in 1842; both

of them were dead more than three years before the commencement of the present suit.

The general rule is, that the statute of limitations in force where the remedy is sought, can alone be relied upon by the defendants in bar of the plaintiff's action. But if the possession of property be held in another State, until the adverse holding grow into a good and valid title under the laws of that State, and thereby divests the claimant of all right, which is proved to be its effect in the State of Tennessee, we would not be understood as deciding that a mere change of possession to another State, where the lapse of a greater length of time was necessary to constitute a bar, should have the effect to revive the claimant's right, and re-invest him with a title to the property. It is not necessary, however, at this time, to decide this question, because neither the Tennessee statute of limitations, nor our own, can be successfully relied upon in this case.

*The general rule is, that the statute of limitations in force when the remedy is sought, can be relied upon to bar the action.*

No administration has been granted on the estate of either of the two children who have died. According to the law of Tennessee, as proved in the cause, no suit for distribution can be brought until administration has been granted upon the estate of the decedent. The statute of limitations cannot commence running, until the right to sue exists. If, therefore, administration was now granted, a suit for a division of the slaves could be prosecuted, unaffected by the lapse of time. For the same reason, our statute of limitations would have no application, even had five years elapsed after the decedent's death, before the suit was commenced. A suit cannot be maintained for a division of slaves *descended*, until the appointment of an administrator. The statute of 1819, (1 *Stat. Law*, 780,) authorizes actions to be brought against heirs and devisees, if no person administer on the estate of the deceased for the space of one year after his or her death. But this provision only applies to creditors, and does not authorize suits between the heirs for distribution.

*No suit can be maintained for distribution of slaves descended until administration.*

And if the Courts of this State have no power to grant administration, on the ground that the property in contest was not in this State at the time of the death

CARGILE
*vs*
HARRISON, &c.
of the complainant's half sisters, who also resided out of this State at the time of their death, and that, therefore, having obtained possession of the property, they would assume jurisdiction for the purpose of affording relief to such of our own citizens as have a just right and title to a portion of it, by decreeing a distribution without the appointment of an administrator, and that consequently the want of an administrator, one not being necessary, would not prevent the operation of the statute of limitations, still, as the suit could not be commenced until the property was brought into the State, the statute could have no application in this case, as the slaves had not been here five years before the institution of the present suit.

To a bill for a sale and distribution of slaves *descended*, the administrator and all the heirs are necessary parties: *Kendrick &c.* vs *Kendrick*, (4 *J. J. Mar.* 241.) In this case the complainant did not allege in his bill, that administration had been granted in the State of Tennessee; nor did he allege that the slaves were in that State at the time of the decedent's death, and have been brought here since, so that the Courts in this State had no power to grant administration. Not having made the administrator a party, and having failed to allege that none had been appointed in this State, or to assign any reason for not having the proper parties before the Court, his bill was defective, and it was therefore right to dismiss it, but the dismissal should have been without prejudice.

Wherefore, the decree dismissing the complainant's bill absolutely, is reversed, and cause remanded, that it may be dismissed without prejudice. The parties in this Court must each pay their own costs.

*B. Y. Owsley, J. & W. L. Harlan and C. D. Semple* for plaintiff; *Maxey and B. & A. Monroe* for defendants.

*Marginal note:* To a bill for the distribution of slaves descended, the adm'r. and all the heirs are necessary parties.