CASE 91—LIMITATION—JANUARY 26, 1884.

# Tate v. Hawkins, &c.

### APPEAL FROM BRECKINRIDGE CIRCUIT COURT.

1. A lien upon land sold to a remote vendee is a charge upon the land which it is not the policy of the law, nor in accordance with its analogy, should exist any longer than the statutory existence of the note creating it.

2. B bought a tract of land from A, and executed his notes for the purchase money. B afterwards sold and conveyed the land to C, taking his notes for purchase money. As they matured, C paid all the notes so given. B made partial payments upon his notes to A, taking them out of the statute of limitation. Held:

That although A is entitled to his personal judgment against B, yet when he attempts to enforce his lien upon the land in the hands of C, he is met by the statute, which begins to run at the expiration of fifteen years after the note from B to A is due.

3. B's recognition of *his* debt to A, by partial payment, can not affect the remote vendee who relies upon the statute of limitation, and who gave no consent to B's waiver of the statute by payments, and who knew nothing of it.

N. McMERCER AND WM. LINDSAY FOR APPELLANT.

It is the settled rule that a partial payment on a note, made before the statute of limitation begins to run, is *prima facie* an acknowledgment that the balance remains unpaid, and suspends the running of the statute prior to the date of the payment. (English v. Wathen, 9 Bush, 387; Hopkins v. Stout, 6 *Ib.*, 375.)

There is no charge of combination between Hawkins and appellant, and no pretense that the note has been paid.

Upon the pleadings appellant is entitled to have his lien enforced.

JNO. ALLEN MURRAY AND WM. MILNER FOR APPELLEE.

Appellee distinctly relies upon the statute of limitation.

The payment of Hawkins to appellant may take the note out of the statute of limitation so far as he is concerned, but appellee, as a remote vendee, who has once paid for the land, can not be affected by such payment, and his plea of the statute must bar any attempted enforcement of a lien upon the land conveyed to him. (Frasier v. Frasier, 13 Bush, 399; Wathen v. English, 9 *Ib.*, 387; Mosby v. Garnett, 1 J. J. Mar., 216; Bank of Hopkinsville v. Rudy, 2 Bush, 328; Gen. Stat., ch. 71, art. 3.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

July 31, 1861, in consideration of a tract of land sold, but not conveyed to him until March 17, 1862, appellee, Hawkins, executed a promissory note to the vendor, Jennings, payable March 1, 1863, to secure the payment of which a lien was reserved in the deed.

March 15, 1864, Jennings' executor, in writing thereon, assigned the note without recourse to appellant, the residue then agreed to be due having, as appears from a memorandum written at that time upon the note, and signed by Hawkins, been paid off for him by appellant.

On the same day Hawkins sold and conveyed the same land to Basket, the deed therefor being acknowledged and lodged for record April 16, 1864.

Basket having paid the full consideration, took possession of the land and held it until March 23, 1875, when he sold and conveyed it to appellee, Milner, who paid him therefor, and has held it ever since.

This action was brought March 21, 1881, against appellees, Hawkins and Milner, to recover personal judgment for the amount of the note unpaid against the first named, and to enforce the lien retained in the deed from Jennings, and subject the land in the possession of the latter to the payment thereof.

No defense was made by Hawkins, and personal judgment for the debt was rendered against him; but Milner resisted enforcement of the lien, and judgment was rendered dismissing the petition as to him.

We do not agree with counsel for appellee that the memorandum upon the note signed by Hawkins imports anything more than an acknowledgement by him of the amount of the note then due. The assignment by Jennings' executor

invested appellant with the legal title to the note, and the right to maintain an action thereon for the residue of the debt due, and the enforcement of the lien upon the land for its payment.

The principal ground relied on by appellee, Milner, as a defense to the action, is the statute of limitation.

It appears from endorsements on the note that several payments were made by Hawkins subsequent to the assign ment to appellant, one of them being dated March 10, 1873, which was within fifteen years from the time the cause of action accrued, and another was dated March 16, 1878, which was after the lapse of that period. And counsel for appellant, relying upon the cases of Hopkins v. Stout (6 Bush, 375), and English v. Wathen (9 Bush, 381), contends that the partial payment, made within the required period, was *prima facie* an acknowledgment that the balance of the note then remained unpaid, and suspended the running of the statute prior to the date of that payment.

But before this rule can be applied in this case, if it applies at all, it should, if the fact is controverted in the pleadings, be proved that the partial payment was made at the time it purports to have been made, or at least within fifteen years from the time the note became due. (Frazer, &c., v. Frazer, 13 Bush, 397.)

As, however, it is not clear either that the issue of fact was properly made in the pleadings, or that it was proved the partial payment was made within the time required to avoid the statutory bar, we will proceed to the main and decisive question whether, according to the rule adopted in the cases referred to, the partial payment made by Hawkins has had the effect to suspend the running of the statutes to the prejudice of Milner, the remote vendee.

In Stout v. Hopkins the following language is used: "The philosophy of a peremptory bar by statutory proscription results from two considerations—*first*, from the prescribed lapse of time, nothing else appearing, the law presumes, satisfaction or exoneration; and, *second*, the danger of the loss of evidence of extinguishment prudently makes the presumption intraversible and conclusive. But the acknowledgment within the statutory time defeats the presumption up to that time, and breaks a link in the continuous running of the statute, and consequently the antecedent time is not counted in computing the bar, and that elision operates so as to elongate the statute to a corresponding extent, and to postpone the cause of action to the date of the acknowledgment just as the statutory saving of any sort of obstruction would do. The party making the acknowledgment waives past time, and is estopped from pleading it, and therefore the bar is not complete until the required time shall afterwards run without further obstruction or recognition of the cause of action. The presumption of exoneration commences after such recognition, and if there shall be subsequent satisfaction, the posterior time must be long enough to authorize the presumption of it *per se* and alone. In an action brought before the interlapse of the time required by the statute, satisfaction in the meantime will not be presumed as a deduction of law, and the *debtor could not complain of an elongation resulting from his own act.*"

In the subsequent case of English v. Wathen this rule was adhered to, it being held that an "admitted payment . . . within fifteen years before the institution of the suit, which was not qualified or restricted by the evidence in its legal import or effect, was *prima facie* evidence of an acknowledgment, as of the date that the residue of the debt,

as appearing from the note, remained unpaid, and of con-tinuing liability therefor, and consequently sufficient to sus-pend the operation of the statute between the accrual of the cause of action on the note and the date of the payment."

According to the doctrine thus announced, the statutory bar of fifteen years is not complete until the required time shall have run after the last partial payment, or "the last obstruction or recognition of the cause of action," and con-sequently appellant might have brought this action against Hawkins at any time within fifteen years from March 16, 1878, the date of the last payment, or more than thirty years after the note fell due. And if the rule be applied to his lien upon the land, he would have a longer period within which to enforce it than is allowed to persons having title, though laboring under disabilities, to maintain an action for the recovery of the land itself.

In our opinion, analogy, as well as the reason and policy of our statutes, forbid the extension and application of the rule to the prejudice of the remote vendee, Milner. "A statute of limitation," says Justice Story, "instead of being viewed in an unfavorable light as an unjust and discreditable de-fense, should have received such support from courts of jus-tice as would have made it what it was intended to be, em-phatically a *statute of repose.*" (Bell v. Morrison, 1 Peters, U. S., 360.) And in the language of another judge: "This is not the epoch when that salutary protection which the legislature has wisely thrown around us as a safeguard against fraud and oppression, should be frittered away by judicial refinements and subtile exceptions that never entered into the contemplation of its enlightened framers, and it has for many years been a subject of avowed and sin-cere regret with the most distinguished judges and eminent

jurists of the age that any constructive innovations were ever engrafted upon the acts of limitation." (Justice Dorsey in Green v. Johnson, 3 Gill and Johns, Md., 394.)

Having in view the further repose and security of innocent purchasers of real estate against fraud and oppression, not only did the legislature, by the Revised Statutes, reduce the time within which an action may be maintained for its recovery from twenty to fifteen yevrs, but it has provided that "when any real estate shall be hereafter conveyed, and the purchase money, or any part thereof, shall remain unpaid at the time of the conveyance, the grantor shall not thereby have a lien for the same *unless it be expressly stated in the deed what part of the consideration remains unpaid;*" and the same provision was engrafted in the General Statutes.

The effect of this, as construed by this court, has been to so far change the law existing prior to the Revised Statutes, that the vendor is held to waive his lien as to creditors and subsequent purchasers, unless he complies with the statute and expressly states in the deed what portion of the purchase money remains unpaid. But the lien still exists, upon equitable principles, against the immediate vendee, who must know if the price is not paid, and against volunteers under him, who can occupy no better position than he does himself.

The language of the statute is peremptory that civil actions upon promissory notes shall be commenced within fifteen years after the cause of action first accrued, and not after. And it has been held by this court that when an action on the note given for the purchase price can not, on account of the statutory bar, be maintained, the lien, which is only a mere security, can not be enforced, the court using this language: "The lien is only a peculiar sort of resulting trust,

and the statute of limitation applies to an implied trust. Besides, had the trust been express and not within the statute, still it could not be enforced as a mere incident to the debt which is the principal, if the debt is paid or barred by time." (Williams v. Smith, 4 Bush, 541.)

By the terms of the statute the action of appellant on the note was barred fifteen years after the note matured, and he had then lost his right to maintain the action for the enforcement of the lien.

If appellee, Milner, is now to be deprived of the safeguard provided by law, and upon the faith of which he purchased and paid for the land, it is to be done by an obstruction to the running of the statute, and a recognition of the cause of action after it had by law ceased to exist, made by Hawkins without his consent or notice to him.

This court has, in the two cases referred to, held that Hawkins could, by his own act, elongate the statute, and continue his liability upon the note beyond fifteen years from the time it fell due, but it was not, nor ought to be, determined that Milner should thereby suffer.

The lien is a charge upon the land which it is not the policy of the law, nor in accordance with the analogy of the law, should exist longer than the statutory existence of the note; and if reasons were necessary to justify this salutary and necessary principle, they are afforded by the circumstances of this case. Appellant is shown to have known of the purchase by Basket and of the sale by him to Milner, and from his relation to Hawkins, being a brother-in-law, must have known that Hawkins was paid in full for the land, yet he continued to indulge him for more than fifteen years and until he became insolvent, and then attempted to subject the land to the payment of his debt. The consideration

for this indulgence, whether friendship for Hawkins or his agreement to pay usurious interest, did not benefit Milner. In our opinion the statute should not be thus perverted in letter and spirit for the benefit of a creditor guilty of such *laches*.

The judgment must be affirmed.