WHITELEY v. CENTRAL TRUST CO. OF NEW YORK.

CENTRAL TRUST CO. OF NEW YORK v. WHITELEY.

(Circuit Court of Appeals, Sixth Circuit.   July 8, 1896.)

No. 401.

1. RAILROAD MORTGAGE—PRIORITIES.
   A surety upon a supersedeas bond given by a railroad company while apparently solvent, and not in default in interest, if compelled, after the insolvency of the company,· to pay the judgment appealed from, is not entitled to be repaid from the proceeds of the property of the company in preference to the mortgagee thereof.

2. VENDOR'S LIEN.
   No vendor's lien arises when the consideration consists of covenants by the vendee to perform acts for the breach of which the remedy at law is an action sounding in damages.

3. SAME—BONA FIDE PURCHASERS.
   Gen. St. Ky. c. 63, art. 1, § 24, provides that the grantor of real estate shall not have a lien for the unpaid consideration against bona fide creditors and purchasers, "unless it is stated in the deed what part of the consideration remains unpaid." *Held* that, where the consideration for a deed to a railroad company of right of way consisted of covenants by it to build and maintain fences and a depot on the grantor's land, and to allow the grantor free travel on its trains, the recital of such covenants in the deed did not state "what part of the consideration remained unpaid."

Appeal from the Circuit Court of the United States for the District of Kentucky.

David W. Fairleigh, for Wm. E. Whiteley.

Edmund T. Trabue, for Central Trust Co.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

LURTON, Circuit Judge.   W. E. Whiteley, at the request of the Louisville, St. Louis & Texas Railway Company, became its surety upon a supersedeas bond executed November 5, 1892.   The railway company had been sued in a circuit court of Kentucky in an action at law for damages for breach of covenants contained in a conveyance under which it had acquired a right of way through the lands of one E. P. Taylor, situated in Daveiss county, Ky.   The circuit court rendered judgment against the railway company for the sum of $6,406.55, with costs and interest from October 29, 1892.

In order to obtain a review of this judgment in the Kentucky court of appeals, an appeal was prayed and allowed, and a supersedeas bond executed, on which Whiteley became bound as surety. This judgment was affirmed by the court of appeals in December, 1894.   28 S. W. 666.   The railway company, pending the appeal, became insolvent, and passed into the control and management of a receiver appointed by the United States circuit court for the district of Kentucky, under proceedings instituted in that court by general creditors.   Subsequently two foreclosure bills were filed by the Central Trust Company of New York, as trustee under two mortgages covering the entire road and its equipment, and the former receivership was extended to these suits.   By reason of this sub-

sequent insolvency, Whiteley, as surety, has been obliged to pay in discharge of his liability $8,158.10. He has intervened in the foreclosure suits mentioned, and claims that the circumstances are such as to entitle him to payment out of the corpus of the mortgaged property in preference to the mortgagees. The decree of the circuit court gave him a priority as to a large part of his claim, on the theory that the debt paid was purchase money for land, and therefore a prior equitable lien. From this decree both Whiteley and the Central Trust Company have perfected appeals.

Two distinct theories have been advanced by counsel for Whiteley as furnishing ground upon which priority of payment should be accorded his claim. The first is that his act as a surety on the supersedeas bond operated to keep the property together, and to keep the railroad as a going concern, and that the mortgagees were indirectly benefited, and should, therefore, be postponed until he has been paid. The second is that the covenants in the deed of conveyance of a right of way from Taylor to the railroad company constituted the consideration for the conveyance, and that the judgment for damages for breach of those covenants fixes the money value thereof, and, although no express lien was retained, an equitable lien is implied, which must be discharged in preference to mortgages subsequently executed with record notice of the existence of the covenants set out in the title of the company. We shall consider these questions in the order stated. The case of Trust Co. v. Morrison, 125 U. S. 591 et seq., 8 Sup. Ct. 1004, is supposed to lend countenance to the first ground upon which this court is asked to give relief to the intervener. Both of the mortgages now being foreclosed were in existence when Whiteley stepped forward and assumed the liability of a surety upon the supersedeas bond of the railway company. Both mortgages covered substantially the whole property of the mortgagor company, including its rights of way, depots, depot grounds, rolling stock, and equipments of every kind. But it is said that under the law of Kentucky an execution might have been levied upon the equipment of the company, and, although such levy would have been subject to the prior mortgage liens, that still such a levy and execution sale would have greatly embarrassed and crippled the operations of the railway company as an active common carrier, and worked great detriment, directly and indirectly, to the mortgagees, as the substantial owners of the property. This is the principal equity which is supposed to bring this case within the logic of Trust Co. v. Morrison. The two cases may be assumed to present analogous features, so far as this equity is concerned. But here their identity is at an end. The judgment in Morrison's favor was not rested alone upon the equity stated. A succession of equitable circumstances existed in that case, which unitedly were deemed strong enough to support a decree in his favor. When Whiteley became surety on this supersedeas bond, he did so at the request of an apparently solvent company, and presumably as a matter of accommodation, and upon the personal credit of the company. When one becomes a surety under such circumstances, he is presumed to have trusted his prin-

cipal, and not the property. In no state is this obvious principle more positively recognized than in the state of Kentucky. Johnson v. Morrison, 5 B. Mon. 107; Bank v. Rudy, 2 Bush, 329. In Morrison's case he did not trust his principal, but took a chattel mortgage upon four engines. Another most significant circumstance upon which that judgment was rested is entirely absent from Whiteley's case. When Morrison stepped in and prevented a levy upon and sale of the railroad equipment, the railroad company had been long in default upon the interest on its mortgage debts. The mortgagees had an existing right to take possession of the mortgaged property, or to have secured the appointment of a receiver. They had done neither, but had suffered the railroad company to continue in the possession and management of its property. When a levy upon equipment was threatened, and the operation of the railway imperiled, the mortgagees, though legally authorized to prevent such a result, stood by and did nothing, and saw Morrison intervene, and by his act keep the property together, and keep the railroad in operation. In the case before us, the railroad company was not in default as to its interest, and was rightfully and legally in the complete control and management of its property. The mortgagees had no right to interfere with that management, and no right of foreclosure. This furnishes a marked distinction between the two cases.

But a circumstance of greater significance than any yet mentioned lies in the fact that, after a receiver had been appointed for the company, in whose behalf Morrison became surety, the receiver applied to the court for permission to protect Morrison and others, who had become sureties under like circumstances, by paying out of current income the debts upon which they were bound. An order was accordingly made allowing the receiver "to pay out of any money coming to his hands as such receiver, over and above expenses of operation and repairs," all such claims as had been brought to the attention of the court, including the claim upon which Morrison was liable. The mortgagees, though parties, made no objection to this order. Their mortgages were foreclosed, and the property bought in by them, under a decree which obligated them to pay all intervening claims which the court should deem entitled to priority out of the property or assets of the company. The receiver did not pay off this Morrison claim upon the pretense that the income was insufficient. The court, however, found that this was untrue. That the income had been used in the purchase of "new property, real estate, and rolling stock," and that this property, into which income had been diverted, had passed into the hands of the mortgagee purchasers. The income thus diverted to the benefit of the mortgagees was held to be presumably sufficient to have indemnified Morrison, and he therefore entitled to be paid out of the corpus of the property which had been covered by the mortgages and bought in by the mortgagees. No such circumstance exists in Whiteley's case. Justice Bradley carefully guarded the court's opinion by declaring that case to be "a special one." After distinguishing the case from Burnham v. Bowen, 111 U. S. 776, 4 Sup.

Ct. 675, and announcing that nothing was intended to be decided conflicting with that case, he concluded by saying of Morrison's claim "that it was presented upon the equities arising in favor of the intervener for taking the action he did, and thus securing the results which followed, and upon the other circumstances of the entire case taken all together; and it was upon these grounds that the claim was allowed by the court below." 125 U. S. 613, 8 Sup. Ct. 1011.

Such cases as Fosdick v. Schall, 99 U. S. 235; Miltenberger v. Railroad Co., 106 U. S. 286, 1 Sup. Ct. 140; Dow v. Railroad Co., 124 U. S. 652, 8 Sup. Ct. 673; and Sage v. Railroad Co., 125 U. S. 361, 8 Sup. Ct. 887,—seem to rest upon the doctrine that railroad mortgagees impliedly agree that current earnings shall be first applied to current operating expenses, and, if diverted to the payment of interest on the mortgage debts, may be followed, or such creditors subrogated to the rights of mortgagees, to the extent of such diversion. That those cases have carried the rule of displacing mortgage debts as far as the courts feel justified is made very clear by the emphatic declarations of the supreme court in Kneeland v. Trust Co., 136 U. S. 97, 10 Sup. Ct. 950, and Thomas v. Car Co., 149 U. S. 95, 13 Sup. Ct. 824. See, also, Morgan's L. & T. R. & S. S. Co. v. Texas Cent. Ry. Co., 137 U. S. 171–194, et seq., 11 Sup. Ct. 61.

In the Kneeland Case the court said:

"The appointment of a receiver vests in the court no absolute control over the property, and no general authority to displace vested contract liens. Because in a few specified and limited cases this court has declared that unsecured claims were entitled to priority over mortgage debts, an idea seems to have obtained that a court appointing a receiver acquires power to give such preference to any general and unsecured claims. It has been assumed that a court appointing a receiver could rightfully burden the mortgaged property for the payment of any unsecured indebtedness. Indeed, we are advised that some courts have made the appointment of a receiver conditional upon the payment of all unsecured indebtedness in preference to the mortgage liens sought to be enforced. Can anything be conceived which more thoroughly destroys the sacredness of contract obligations? One holding a mortgage debt upon a railroad has the same right to demand and expect of the court respect for his vested and contracted priority as the holder of a mortgage on a farm or lot. So, when a court appoints a receiver of railroad property, it has no right to make that receivership conditional on the payment of other than those few unsecured claims which, by the rulings of this court, have been declared to have an equitable priority. No one is bound to sell to a railroad company, or to work for it, and whoever has dealings with a company whose property is mortgaged must be assumed to have dealt with it on the faith of its personal responsibility, and not in expectation of subsequently displacing the priority of the mortgage liens. It is the exception, and not the rule, that such priority of liens can be displaced. We emphasize this fact of the sacredness of contract liens for the reason that there seems to be growing an idea that the chancellor, in the exercise of his equitable powers, has unlimited discretion in this matter of the displacement of vested liens."

The case before us is not within any principle to be fairly deduced from Morrison's Case. The conclusion we reach finds strong support in the opinion of Justice Brewer, when a circuit judge, as reported in Blair v. Railroad Co., 23 Fed. 522; as well as in the able and convincing opinion of Judge Jenkins in Farmers' Loan

& Trust Co. v. Northern Pac. R. Co., 68 Fed. 36. For these reasons we concur in the opinion of Judge Barr, in so far as he refused any relief upon the ground just considered.

We come now to consider whether Taylor's judgment constituted a prior lien to which Whiteley may be subrogated. That judgment was for damages for breach of the covenants contained in Taylor's deed conveying a right of way and depot site. Those covenants were undoubtedly the principal consideration for the conveyance. They were that the—

"Said railroad and its successors shall put up and keep in good repair a good and lawful fence, made of slat and wire, along both sides of said railroad where it crosses over said land, and to build and keep in good repair stock gaps at reasonable distances along said road, if required by said Taylor, and especially shall such gaps be kept where said Taylor's lands adjoin his neighbors'. Said railroad and its successors agree that they will build and keep a good and substantial depot and switch on said Taylor's lands where said railroad intersects the Iceland road, at which all trains on said railroad flagged or signaled shall stop; and said Taylor shall have the use of said switch free of charge for any shipping he may have done on said road; and for the purpose of building said switch and depot said Taylor hereby conveys to said railroad fifty feet fronting on the Iceland road where said railroad intersects the Iceland road, and running back parallel with said railroad seventy-five feet. Said railroad company agrees to build said depot and switch in a reasonable time after the cars commence running on said road at said point. It is further agreed by said railroad and its successors that said Taylor and his family shall have free travel over the line of said railroad on its trains."

Judge Barr was of opinion that certain of these covenants ran with the land, and bound the successors in title, while others were personal. The former class he deemed a charge on the land in the nature of a vendor's lien, and held that so much of the judgment as was for damages for breach thereof constituted an equitable vendor's lien entitled to payment out of the corpus of the mortgaged property in preference to both the mortgages. The contention of Whiteley was, and now is, that the covenants collectively constituted the consideration for the conveyance of the right of way and depot site, the money value of which was fixed by the judgment; and that for this money value a vendor's lien exists. From so much of the decree as refused relief upon part of the judgment he has perfected an appeal. The Central Trust Company, denying that any vendor's lien exists, appealed from the decree in Whiteley's favor.

In the view we take of this case it is not necessary to consider how far a successor in title would be bound by the covenants of this deed. If we assume that the covenants were real covenants, following the title, does a lien, enforceable in equity, exist in favor of a judgment for damages for a breach of such covenants? No express lien for the security of such damages or to secure the performance of the covenants is claimed. If one exists at all, it must be upon the ground that an implied vendor's lien arises to secure the performance of covenants entered into as a consideration for the conveyance of land, and that the same equitable lien exists in favor of any judgment for damages for the breach of such covenants, under the principles touching such liens as are enforced by courts of equity. The equitable lien of a vendor will be recognized and en-

forced in courts of the United States if in harmony with the law of the state in which the lien is sought to be enforced. Bayley v. Greenleaf, 7 Wheat. 46; Fisher v. Shropshire, 147 U. S. 133–139, 13 Sup. Ct. 201; Gold Mines v. Seymour, 153 U. S. 509, 14 Sup. Ct. 842. The doctrine that a lien on land exists for the purchase money may be regarded as very well settled in the jurisprudence of England, as well as that of the state of Kentucky. In Mackreth v. Symmons, 15 Ves. 329, Lord Eldon has given us a very full historical review of the cases, and has drawn deductions as to the extent of the doctrine. In Bayley v. Greenleaf, cited heretofore, the limits of the doctrine in respect of the obligation of the lien upon subsequent vendees, and the general nature of this most fragile of all equitable liens, received a most thorough consideration by Chief Justice Marshall. Further light was thrown on the subject in a masterly opinion by Justice Story in Gilman v. Brown, 1 Mason, 212, Fed. Cas. No. 5,441, subsequently affirmed in Brown v. Gilman, 4 Wheat. 255. In Gilman v. Brown, cited above, Justice Story said of the doctrine that "the rule is manifestly founded on a supposed conformity with the intention of the parties, upon which the law raises an implied contract; and therefore it is not inflexible, but ceases to act when the circumstances of the case do not justify such a conclusion." 1 Mason, 191, Fed. Cas. No. 5,441. What the circumstances are which will determine the existence or nonexistence of the lien is often a question of difficult determination, and has given rise to certain nice distinctions which have crystallized into rules of decision, somewhat arbitrary in their consequence. Thus it seems to be settled that, if the consideration be that the vendee will enter into certain covenants, as for the payment of an annuity to A. and a certain sum to another in the event of the death of the vendor, the consideration on the one side is the conveyance of the estate, and upon the other side the entering into the covenants; in which case, if no lien be reserved, none will be implied for the performance of the covenants. Clarke v. Royle, 3 Sim. 499; Parrott v. Sweetland, 3 Mylne & K. 656; Buckland v. Pocknell, 13 Sim. 406; Sugd. Vend. 65, 66; McCandlish v. Keen, 13 Grat. 615–626, et seq. The principle upon which Clarke v. Royle and the other case cited above may be said to rest is that, where the consideration for the conveyance is the entering into an agreement to do or not to do certain things, and the remedy for a breach of such agreement consists in an action for unliquidated damages, the parties will be presumed not to have intended that the land should remain charged with a vendor's lien to secure such unliquidated damages,—damages which may never accrue, and are unascertainable by third persons dealing with the land. The consideration for the deed is deemed to be the entering into the covenants. When this is done, the covenants are deemed a substitute for the price. Indeed, the rule has been very broadly stated by most American courts to be that a vendor's lien will not arise where the consideration is unliquidated, and ascertainable only by an action sounding in damages. The existence of such a lien for the security of a covenant, accepted as the consideration for a conveyance of land, has most often arisen where the

deed was in consideration that the vendee would maintain or support the vendor. Where there has been a breach of such a covenant, the great weight of opinion is that no lien exists to secure the performance thereof, unless expressly contracted for. The subject received elaborate consideration from the supreme court of Virginia in the cases of Brawley v. Catron, 8 Leigh, 522, and McCandlish v. Keen, 13 Grat. 615, and the doctrine of those cases has been generally accepted as a sound statement of the equitable doctrine touching the nonexistence of a lien where the consideration consists in the entering into covenants to do or perform acts for the breach of which the remedy at law was an action sounding in damages. Hiscock v. Norton, 42 Mich. 320–325, 3 N. W. 868; Campbell v. Campbell, 21 Mich. 438; Payne v. Avery, Id. 524–551; Arlin v. Brown, 44 N. H. 102; Harris v. Hanie, 37 Ark. 348; Bell v. Pelt, 51 Ark. 433, 11 S. W. 684; McDonald v. Land Co., 78 Ala. 382–384; Walker v. Struve, 70 Ala. 167; Patterson v. Edwards, 29 Miss. 71; Barlow v. Delany, 36 Fed. 577; Peters v. Tunell, 43 Minn. 473, 45 N. W. 867; Chase v. Peck, 21 N. Y. 581; Chapman v. Beardsley, 31 Conn. 115; Meigs v. Dimock, 6 Conn. 458; Jones, Liens, § 1071.

Counsel for appellant Whiteley have cited the case of Railroad Co. v. Lewton, 20 Ohio St. 401, as supporting their contention. The facts of that case make it an exceptional one. The bargainor had retained the title, and only agreed that the railroad company might enter upon and construct the railway in consideration of $1,500, to be paid in money, and the construction of certain road crossings and cattle guards. There was a judgment at law for the unpaid purchase money, and another judgment for the damages for breach of the agreement as to crossings and cattle guards. Upon a bill in equity to declare and enforce a lien in favor of both judgments as against mortgagees, the court held that the retention of the legal title operated to put mortgagees upon inquiry as to the rights of the vendor. As to the lien of the judgment for damages, the court held that a lien existed for its payment as the money value of the covenants breached. The ground upon which this case is rested is indicated very plainly by Judge McIlvaine, who delivered the opinion of the court, who, among other things, said:

"It may be that this equity of the defendant in error is not, technically, what is commonly called a 'vendor's lien,' inasmuch as the legal title has not been conveyed by him to the purchaser. It is, however, at least as strong a hold upon the property sold as the lien of a vendor after title conveyed; for here not only is an equity retained by the vendor in the property sold, to the extent of the unpaid purchase money, but the legal title is also retained by him as additional security. It cannot be said in this case 'that, from the nature and objects of this sale, the vendor did not intend to rely upon the thing sold as security for his payment.' Retaining the legal title is very strong, if not conclusive, evidence that he did intend to rely upon it as security. The presumption, however, in all cases, even where the vendor conveys the legal title, is that he intends to rely upon the property sold as security. And before this abandonment or waiver of such security can be found, it must be shown that he did not intend to rely upon it."

From the fact that the vendor had retained the legal title it is very clear that the Ohio court did not have the question now presented in this case.

There is nothing in the decisions of the Kentucky courts which in any way strengthens the case for a lien. Upon the contrary, the legislation of that state has much modified the general rule so far as third persons are affected by the secret and implied lien of a vendor. Gen. St. Ky. c. 63, art. 1, § 24, provides as follows:

"When any real estate shall be conveyed, and the consideration, or any part thereof, remains unpaid, the grantor shall not have a lien for the same against bona fide creditors and purchasers, unless it is stated in the deed what part of the consideration remains unpaid."

This statute is restrictive in its character, and does not originate a lien where, under general principles of equity, one would not exist. Long v. Burke, 2 Bush, 90; Ledford v. Smith, 6 Bush, 132; Brown v. Ferrell, 83 Ky. 417. In Long v. Burke, cited above, a part of the consideration was that the vendee "is to pay all the debts which were owing by me the 10th day of March, 1860." Touching the question as to whether a vendor's lien existed for the performance of this covenant, the court held it to be a mere personal covenant, and also held that under the statute no lien existed, because the deed did not state what part of the consideration remained unpaid. As to this, the court said:

"It is very clear that a covenant to pay all the vendor's debts existing on a given day does not state the portion of the purchase price unpaid. Nothing, in fact, could be more indefinite. It did not give even a clue as to how this amount could be ascertained. Had it even specified to whom these debts were due, without stating the amount to each, it would have been as indefinite as to state that some of the purchase price was still unpaid to the vendor, which the court held to be insufficient."

See, also, Chapman v. Stockwell, 18 B. Mon. 653.

By the statute, as it now stands, the restriction applies only to bona fide creditors and purchasers. Ross v. Adams, 13 Bush, 370; Tate v. Hawkins, 81 Ky. 582; Thompson v. Heffner, 11 Bush, 353.

Assuming the mortgagees, through their trustee, the Central Trust Company, to have notice of the covenants of this deed, the deed itself does not expressly state "what part of the consideration remains unpaid." From it a creditor or purchaser might learn that the consideration consisted in covenants, some of which were perpetual, while others might last for several generations. The purpose of the statute was to give definite notice to creditors and buyers of the extent to which the purchase price remained unpaid. The judgment in Long v. Burke seems conclusive. If a covenant to pay all the debts of the vendor due on a certain day was too indefinite to stand as a compliance with this statute, it is difficult to see how indefinite, continuing covenants, such as those found in this deed, can be held to be a definite statement of the part of the consideration remaining unpaid.

The case must be remanded, with direction to enter a decree in accordance with this opinion.