CASE 101—ACTION TO FORECLOSE LIEN—JUNE 10.

# Cook v. Union Trust Co., Etc.

106    803
138    17

### APPEAL FROM MASON CIRCUIT COURT.

LIMITATION—EFFECT OF PAYMENTS ON SUBSEQUENT MORTGAGEE.—As
between a vendor holding a lien for unpaid purchase money and
a subsequent mortgagee of the land, no payments made on the
vendor's lien after the execution of the mortgage, will operate
to elongate the statutory limitation, but as against such mort-
gagee limitation will run from the time of the last payment
made before the excution of the mortgage.

A. M. J. COCHRAN FOR APPELLANT.

The appellant's vendor's lien which was prior in time to the
mortgage to appellee, the trust company, and which was unre-
leased upon the record at the time the trust company's mort-
gage was taken, is superior to the mortgage lien.  Tate v. Haw-
kins, 81 Ky., 577; Kendall v. Clarke, 90 Ky., 178; Carr's Exr.
v. Robinson, 8 Bush, 274; Trousdale's Admr. v. Anderson, 9
Bush, 277; McCracken Co. v. Mercantile Trust Co., 84 Ky., 353;
Hughes v. Edwards, 9 Wheat., 151; Ewell v. Daggs, 108 U. S., 147.

THOS. R. PHISTER FOR THE APPELLEE.

1. A lien upon land, subsequently mortgaged, is a charge upon the
land which it is not the policy of the law, nor in accordance with
its analogy should exist any longer than the statutory exist-
ence of the note creating it.
2. While a partial payment on a note for the purchase price of land
within fifteen years, has the effect as to the vendee to suspend
the running of the statute of limitations, it does not have the
effect as to a subsequent mortgagee not a party to the transaction.
Tate v. Hawkins, 81 Ky., 577; Kendall v. Clark, 90 Ky., 178;
Montgomery v. Tabb, 19 Ky. Law Rep., 468.
3. A mortgagee is a purchaser *pro tanto* and entitled to the protec-
tion of a purchaser.  Murphy v. Boyd, 4 Ky. Law Rep., 441; 1
Ky. Law Rep., 345; Ricketts v. Hooper, 4 Ky. Law Rep., 444;
Halbert v. McCulloch, 3 Met., 456; Snyder v. Hitt, 2 Dana, 204.

JUDGE WHITE DELIVERED THE OPINION OF THE COURT.

In January, 1875, the executors of A. Hord sold and
conveyed to A. M. Bramel certain lands in Mason county

for a consideration in cash and with some deferred pay-mets, payable in one and two years from date. The deed to Bramel reserves a lien for these unpaid notes. These two notes were assigned to appellant, Cook. In March, 1891, Bramel executed a mortgage on this land to appellee, Union Trust Company, to secure a loan made by it. In September, 1892, Bramel executed a deed of general as-signment of all his property for the benefit of all his creditors.

Payments were made on these two notes of appel-lant annually up till 1892. In July, 1893, this action was brought by appellant, Cook seeking a judgment and decree of foreclosure to satisfy the vendor's lien. Appellee trust company was made a party as well as the assignee under the deed of assignment. No defense was made by Bramel or his assignee; but appellee trust company filed its answer and cross petition, and asserted its mortgage lien as being prior to that of appellant by reason of the fact that more than fifteen years had elapsed since the notes of appellant had become due.

Appellant, by reply, denied the priority of ap-pellee's mortgage lien, and alleged the fact of payments made by Bramel each year since 1877, and that her notes were not barred, and, further, when appellee took its mortgage fifteen years had not elapsed from the maturity of the notes for which a lien was retained in the deed to Bramel. The court sustained a demurrer to this reply, and appellant failing to plead further, judgment was rendered for the sale of the prop-erty, giving the appellee trust company priority. From that judgment this appeal is prosecuted. It is conceded that as to Bramel and his assignee in trust for the benefit of creditors the appellant has a lien on the land by reason

of the payments made by Bramel, and that as to part of the judgment. there is no contest.

It is contended for appellant that the payments made by Bramel operated to extend from that date the notes, and that the lien is but an incident of the debt, and as long as the debt is not barred the lien exists, and, being a vendor's lien, is superior to all other liens.

On the other hand, it is contended that as to vendees and mortgagees without actual notice, as appellee is alleged to be, the lien does not exist longer than the statutory time that will bar the debt. That the vendee or mortgagee is entitled to know by an inspection of the records for a period of fifteen years next before whether there exists any liens, and, if none, within that time then as to such vendee or mortgagee no lien will exist. It is insisted that the payments on the note operated to extend the statutory bar only as between the payor and payee, and will not extend it as to vendees and mortgagees without at least actual notice of such payments and extensions. To support the contention of appellee, and which was followed by the lower court, we are referred to the cases of Tate v. Hawkins, 81 Ky., 578 [50 Am. R., 181], and Kendall v. Clarke, 90 Ky., 179 [13 S. W., 583].

The facts of the case of Tate v. Hawkins, as stated by the court in the opinion, are: In 1862 Hawkins executed a note due March, 1863, to one Jennings, his vendor, for the balance of purchase price of land. In 1864 this note was assigned to Tate. On the date of this assignment of the note Hawkins sold and conveyed the land for cash consideration to Basket. In 1875 Basket sold for cash consideration the land to Milner. In 1881 an action was brought by Tate against Hawkins and Milner, seeking to recover the note

and enforce the vendor's lien claimed. Indorsements on the note showed that there was payment made March, 1873, and another March, 1878. Thus the note as to Hawkins was not barred by limitation. The court, per Judge Lewis, said: "By the terms of the statute, the action of appellant on the note was barred fifteen years after the note matured, and he had then lost his right to maintain the action for the enforcement of the lien. If appellee Milner is now to be deprived of the safeguard provided by law, and upon the faith of which he purchased and paid for the land, it is to be done by an obstruction to the running of the statute, and a recognition of the cause of action after it had by law ceased to exist, made by Hawkins without his consent or notice to him. . . . The lien is a charge upon the land, which it is not the policy of the law, nor in accordance with the analogy of the law, should exist longer than the statutory existence of the note; and, if reasons were necessary to justify this salutary and necessary principle, they are afforded by the circumstances of the case."

In the case of Kendall v. Clarke the court, by Judge Lewis, said: "It is obvious more than fifteen years had elapsed from the time the note fell due until the action was instituted; but, to avoid the plea of limitation, a credit of $18.80 indorsed on the note as of January 2, 1882, is relied on, and seems to have been considered by the lower court sufficient for the purpose.

"Whatever may be the operation of the credit so far as Royse, while living, and his personal representative and devisees afterwards might have been, it certainly did not nor should have the effect to continue, beyond the period of fifteen years, the lien on that part of the land purchased by appellant Campbell; for it was expressly decided by this court in Tate v.

Hawkins, 81 Ky., 577, [50 Am. R., 181], that, while a partial
payment made by the original vendee on a note for the
purchase money within fifteen years would have the effect,
as to him, to suspend operation of the statute of limita-
tion between accrual of cause of action on the note and
date of payment, the rule could not be applied to the preju-
dice of a remote vendor nor a party to the transaction.
Consequently, the statute of limitation is, as to Campbell,
clearly a bar, and it was error to enforce the alleged lien
on and subject to satisfaction of the note, any portion of
the original tract owned by him."

The note in this Kendall case was payable De-
cember, 1869, and the action was brought May,
1885. The date of Campbell's purchase, as shown
by an examination of the record, was before the
statutory bar and before the payments that elongated the
statute of limitation as a bar—facts similar in every way
to Tate v. Hawkins.

These cases, appellee contends, are conclusive of the
question that the judgment of the lower court is the law.
We are referred by appellant's counsel to the cases of Mc-
Cracken Co. v. Mercantile Trust Co., 84 Ky., 344,
[1 S. W., 585]; Hughes v. Edwards, 9 Wheat., 489; Ewell
v. Daggs, 108 U. S. 143, [2 Sup. Ct., 408]; Perkins v. Sterne,
23 Tex., 561; [76 Am. Dec., 72]; Duty v. Graham, 12 Tex.,
427; Flanagan v. Cushman, 48 Tex., 241; and Sanger v.
Nightingale, 122 U. S., 176, [7 Sup. Ct., 1109].

In the case in 84 Ky., 344, [1 S. W., 588], it is said:
"There is no statute of limitations as to liens.
If the claim becomes barred, the lien dies with
it. If the claim could be made an incident of
the lien, then the statute of repose would be
defeated. As the claim no longer legally existed, the lien

had nothing to support its existence." This case was a tax lien, which was barred in five years.

In the case of Bank v. Thomes, 8 Ky. Law Rep., 690, [3 S. W., 12], the court said: "The mortgage was a mere incident to the debt and given to secure its payment; and, when the right of recovery as to the debt itself is gone, the lien to secure it necessarily goes with it. The stipulations of the mortgage are not independent covenants upon which a recovery can be had regardless of the debt, to secure the payment of which the mortgage was given. The liability of appellee is on the original paper as the drawer; and, when that liability ceases, the covenants in the mortgage, having created no new right, except the lien, can not be looked to as extending the liability from five to fifteen years."

In the case of Prewitt v. Wortham, 79 Ky., 287, the court said:

"The rule in this State in reference to mortgages, whether on personal or real estate, is that they are mere securities for the debt. No title passes to the mortgagee and no right is acquired by the mortgagee, except as an incident to the debt. When the debt to secure which the mortgage was given is barred by statute, the incident goes with the principal, and the mortgage ceases to be enforceable."

Likewise it has been repeatedly held a mortgage or vendor's lien is an incident of a debt, and that an assignment of the principal obligation carries the right of lien.

All this proposition as to the lien being an incident of the debt and lives with the debt it secures is conceded to apply as between the payor and payee of the debt. But it is contended that as to vendees and mortgagees the same

rule does not apply; that as to vendees and mortgagees the lien is barred when the period fixed by statute will bar the debt,—this, regardless of any elongation of the debt by payments or new promises.

We are of opinion that as to vendees and mortgagees the same rule does not apply as between the parties; but we do not assent to the doctrine that as to vendees and mortgagees all liens are barred in fifteen years after the accrual of the right of foreclosure.

·We are of opinion that after the payee of the note has sold the property in lien, or, as in this case, mortgaged the property, a subsequent payment by Bramel would not elongate the lien on the land as to the appellee trust company, for then the trust company would be subject to the action of Bramel, over whose actions it had no control, and against which it could not guard. However, we are of opinion that, as to the appellee trust company, mortgagee, the lien of appellant for purchase money existed for the full length of time from the date of the last payment or last promise by Bramel made before the execution of the mortgage to appellee trust company, which payment, as stated in the reply of appellant, was January 6, 1892, the mortgage being executed in September, 1892.

Wood on Limitations, section 229, " . . . Any act of the mortgagor which operates to keep the mortgage debt on foot also operates to keep up the mortgage lien, as an acknowledgment of the debt by the mortgagor in the mode and with all the formalities required by law. A part payment of principal or interest made by the mortgagor or his agent revives the mortgage and gives it a new lease of validity from the date of such payment. . . . But, in order to have that effect, the payment must be made

while the mortgagor owns the equity of redemption, and a payment made after he has parted with the same, does not revive or keep on foot the mortgage security, as, from the time when he parts with his interest in the land, his power to bind it in any manner is gone, either as to past or future debts."

Jones on Mortgages (5th Ed.), section 1201, lays down this rule: ". . . Moreover, any purchaser from the mortgagor, with actual or constructive notice of the mortgage, is bound by any previous acknowledgment of the debt by his grantor,"—citing Heyer v. Pruyn 7 Paige, 465, [34 Am. Dec., 355]; Hughes v. Edwards, 9 Wheat., 489; Carson v. Cochran, (Minn.), [53 N. W., 1130]. The same author, continuing (section 1202), says: "A purchaser with actual notice of the mortgage, or constructive notice by means of a registry, can avail himself of the presumption of payment from lapse of time only when the mortgagor could avail himself of it under the same circumstances. The grantee succeeds to the estate and occupies the position of his grantor. He takes subject to the incumbrance, and his title and possession are no more adverse to the mortgagee than were the title and possession of the mortgagor. The purchaser is bound by the acts and declarations of the mortgagor . . . while he retains the equity of redemption, or any part of it; as, for instance, the purchaser of a part of the mortgaged premises can not claim a presumption of payment of the mortgage from lapse of time when this presumption is repelled by payments of interest made by the mortgagor within twenty years, or by his admissions within that time that the mortgage was then subsisting. A purchaser from the mortgagor stands in no better position than the mortgagor himself as to gaining title by possession and lapse of time,

if the mortgage be recorded. The record is notice of the mortgage to a subsequent purchaser, and the mere fact that he has had actual possession under his purchase for the statute period of limitation is no bar to a foreclosure of the mortgage."—citing Herndt v. Porterfield, (Iowa,) [9 N. W., 322]; Johnson v. Laster Association, (Tex. Civ. App.), [21 S. W., 961]; Whittacre v. Fuller, 5 Minn., 508; Ware v. Bennett, 18 Tex., 794.

In the case of Hughes v. Edwards, 9 Wheat., 489, the Supreme Court said: "It is objected, in the third place, that the respondents are barred of their right to foreclose by length of time. It is not alleged or pretended that there is any statute of limitations in the State of Kentucky which bars the right of foreclosure or redemption, and the counsel for the appellants place this point entirely upon those general principles which have been adopted by the courts of equity in relation to this subject. In the case of a mortgagor coming to redeem, that court has, by analogy to the statute of limitations, which takes away the right of entry of the plaintiff after twenty years' adverse possession, fixed upon that as the period, after forfeiture, and possession taken by the mortgagee, no interest having been paid in the meantime, and no circumstances to account for the neglect appearing, beyond which a right of redemption shall not be favored. In respect to the mortgagee who is seeking to foreclose the equity of redemption, the general rule is that, where the mortgagor has been permitted to retain possession, the mortgage will, after a length of time, be presumed to have been discharged by the payment of the money or a release, unless circumstances can be shown sufficiently strong to repel the presumption, as payment of interest, a promise to pay, an acknowledgment by the mortgagor that the mortgage is still existing, and the

like. Now this case seems to be strictly within the terms
of this rule. The two letters from the mortgagor to the
female plaintiff (1803 and 1808) admit that the mortgage
was then subsisting, that the debt was unpaid, and they
contain promises to pay it when it should be in the power
of the writer. In addition to these circumstances, credits
were. indorsed on the bond for payments acknowledged
to have been made, which, though blank, the court below
ascertained to have been made on the 15th of January,
1798, the 15th of May, 1803, and the 2d of August, 1808.

The mortgagor, then, can not rely upon the length of
time to warrant a presumption that his debt has been
paid or released; the circumstances above detailed having
occurred from eight to thirteen years only prior to the
institution of this suit.

"But it is insisted that, although these ac-
knowledgements may be sufficient to deprive the
mortgagor of a right to set up the presumption of pay-
ment or release, they can not affect the other defend-
ants, who purchased from him parts of the mortgaged
premises for a valuable consideration. The exclusive
answer to this argument is that they were purchasers
with notice of this incumbrance. It must be admitted
that it was but constructive notice; but, for every pur-
pose essential to the protection of the mortgagee against
the effect of those alienations, it is equivalent to a direct
notice, and such is unquestionably the design of the reg-
istration laws of Kentucky. A purchaser with notice can
be in no better situation than the person from whom he
derives his title, and is bound by the same equity which
would affect his rights.

"The mortgagor, after forfeiture has no title at
law and none in equity, but to redeem upon the

terms of paying the debt and interest. His convey-
ance to a purchaser with notice passes nothing but an
equity of redemption, and the latter can no more than the
mortgagor assert that equity against the mortgagee with-
out paying the debt, or showing that it has been paid or
released, or that there are circumstances in the case suffi-
cient to warrant the presumption of those facts, or one
of them.

"The court is therefore of opinion that this objec-
tion can not be sustained by either of the appellants."

But when the obligor has parted with title to the prop-
erty, either by sale absolute or by mortgage, his right to
further bind the property ceases, except as his interest
therein exists; and the elongation of the debt by pay-
ments or new promises can only operate as against the
obligor and his property, for no act of his would work an
estoppel against his vendee or mortgagee.

This principle is not in conflict with that of
Tate v. Hawkins, but accords therewith. In that
case Hawkins sold the land by deed in 1864 to Bas-
ket. The lien notes then had some fourteen years
to run. Tate could at any time within the fourteen years
have enforced his lien on the land. The subsequent pay-
ments by Hawkins in 1873 and 1878, made after the alien-
ation of the land by Hawkins, operated to elongate the
note, but could not extend to the land, for the reason that
at the date of these payments Hawkins had no control
over the land, and could not bind it further than he had
done so while he was the owner.

The same is true of the Kendall v. Clarke case.

In this case the notes given, if no payments had been
made, were not barred by limitation at the date of the
mortgage to appellee trust company, and any inspection

of the record would have put it on notice concerning appellant's debt.

At the date of the mortgage to appellee, the appellant, by reason of the annual payments made by Bramel, had fourteen years in which she could collect her notes and enforce her lien, and it can not be said that, by reason of the fact that Bramel executed a mortgage to appellee trust company, this right to enforce collection and her lien was reduced to fifteen years from the original date of maturity. To so hold would allow a debtor to defeat the collection altogether of a debt, if by payments he had been indulged beyond the period of limitation, on the idea that, being the payor and owner of the property, he could by payments elongate both note and lien. For after the lapse of fifteen years from the date of maturity, when it would be barred, except for the payments, the debtor could sell the property free of lien. This can not be the law. The vendee or mortgagee accepts the position as it is when his conveyance is executed. The holder of the lien has all the time to enforce the lien, as the facts of the case at that time give him and no more.

It follows that the appellant's lien for purchase money is not barred by limitation, and she is entitled to have same enforced, even as against the mortgagee trust company. Being a vendor's lien, it is prior to the mortgage lien.

The trial court, therefore, erred in sustaining a demurrer to her reply.

For the reasons indicated, the judgment appealed from is reversed, and cause remanded for proceedings consistent herewith.

(The whole court considered this case. Judge Guffy dissented.)