## Duvall v. Parepoint, et al.

(Decided January 20, 1916.)

### Appeal from Hardin Circuit Court.

1. Limitation of Actions—Effect of Coverture.—Section 2514 of the Kentucky Statutes provides that an action on a note must be brought within fifteen years after the cause of action accrues; but under section 2525 of the Kentucky Statutes the Statute is suspended during the coverture of the payee in the note who is laboring under this disability when the cause of action accrues; and does not begin to run until the disability is removed.

2. Limitation of Actions—Effect of Coverture—Right of Husband to Maintain Action—Statute Not Suspended.—Where a note was executed prior to 1894 to a married woman, her husband had a right

to bring suit on the note, and her coverture did not suspend the running of the statute.

3. Limitation of Actions—Effect on Statute of Failure of Husband to Reduce Note to Possession.—The fact that the husband does not reduce the note to possession does not stop the running of the statute. The question does not turn on whether the husband has reduced the chose in action of his wife to possession, but on whether there was a right of action in him that he could have asserted. The statute begins to run when there is a person free from disability who may maintain the action. Whether he does bring it or not does not affect the running of the statute.

4. Limitation of Actions—Effect of Promise of Payor to Pay Note Secured by Lien, on Rights of Purchaser of Property.—Although the payor of a note secured by a lien on real property may by his promise to pay or partial payments extend the period in which an action may be brought as to him, this does not affect the running of the statute from the maturity of the note as to the lien on the land, and the right to enforce the lien will be barred in fifteen years from the maturity of the note, or from the last payment made on the note before the land came into the hands of the purchaser or mortgagee, as the case may be.

5. Limitation of Actions—Effect on Rights of Owner of Property of Payment or Promise by Payor to Pay, Before He Sells Property.—Where the payor in a note secured by lien on property makes a payment on a lien note or promises to pay it, before he sells the property or mortgages it, limitation begins to run so as to affect the rights of a purchaser or mortgagee only from the date of the payment or promise last made before the property was sold or the mortgage taken.

H. L. JAMES for appellant.

L. A. FAUREST, F. S. YAGER and JOHN C. GRAHAM for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

Some time prior to 1889 the father of John A. Hansbrough died, leaving a large body of land in Hardin county to his four children, subject to the widow's dower. In April, 1889, Hansbrough executed to Ida Hansbrough a promissory note for two thousand dollars, due on May 1, 1890, and to secure its payment executed to her a mortgage on his one-fourth, undivided interest in the land of his father. Ida Hansbrough, before May 1, 1890, married A. D. Efird, and in January, 1913, she assigned the note to the appellant, Duvall. During all the time between the date of the marriage and the assignment of the note, she was a married woman, the wife of Efird.

In November, 1890, Hansbrough executed notes and mortgages for about four thousand dollars to the Yager Brothers on his interest in the land that had been previously mortgaged to Ida Hansbrough. In 1891 a suit was brought in the Hardin Circuit Court by the heirs of Elijah Hansbrough for a sale of the land and a division of the proceeds, and in January, 1892, a judgment was entered ordering the sale of all the land except that part which was set aside to the widow as dower, and at this sale the appellees, Parepoint and Gardner, became the purchasers and took possession, which they have since retained.

In 1912 Lewis, the assignee of the notes and mortgages executed to the Yager Brothers, brought suit against Hansbrough for the sale of and subjection to the debt of his undivided interest in the land that had been allotted to the widow of Elijah Hansbrough, and procured a judgment of sale, and at the sale thereunder became the purchaser. In April, 1913, the appellant Duvall, to whom Ida Hansbrough had assigned the note, brought suit in the Hardin Circuit Court asking for a judgment on the note against Hansbrough and the enforcement of the mortgage lien on the interest of Hansbrough in the land that had been mortgaged to secure the payment of the note. To this suit Parepoint, Gardner and Lewis were made parties.

Upon the ground that the right to subject the land to the payment of the mortgage debt had been barred by limitation, Parepoint, Gardner and Lewis resisted the enforcement of the lien, and the court having adjudged this defense good, and dismissed the petition of Duvall in so far as it sought to subject the land, Duvall appeals.

It is conceded by counsel for appellant that the only question in the case is whether the right to enforce the lien is barred by the fifteen year statute of limitation. Section 2514 of the Kentucky Statutes provides that an action on a note like this must be brought within fifteen years after the cause of action accrued. Here the cause of action accrued on May 1, 1890, more than twenty years before this action was brought; but it is said that as Ida Hansbrough married Efird before the note matured or the cause of action thereon accrued, and continued to be a married woman until after her assignment of the note in 1913 to Duvall, section 2525 of the Ken-

tucky Statutes suspended during these years the running of the statute, and therefore limitation did not bar an action on the note; and this court has so held in Onions v. Covington & Cincinnati R. R. Co., 107 Ky., 154; Sturgill v. C. & O. Ry., 116 Ky., 659; Dukes v. Davis, 125 Ky., 313.

In these cases the identical question here was not involved, but the court held that in all this class of cases, where a woman was laboring under disability of coverture when her cause of action accrued, this disability suspended the running of the statute of limitation; and so if there was no other principle of law that permitted the statute to run and bar this action, in so far as it sought to subject the land, the statute of limitation would not be an obstacle in the way of recovery.

But we think the cases of Hargis v. Sewell's Admr., 87 Ky., 63, and Mouser v. Nunn, 142 Ky., 656, lay down a rule that must be applied to this case and one that makes the fifteen year statute available as a complete defense. In the Hargis case, briefly, the facts were these: In 1855 Thomas Sewell, administered on the estate of William Sewell, and made a final settlement of his accounts in 1859, showing a large balance due to the widow and children of the intestate. In 1882 Thomas Sewell died, and in a suit to settle his estate, the widow of William Sewell and some of his children were made parties, and asserted a claim for the amount alleged to be due them as heirs of William Sewell from his administrator, Thomas Sewell, claiming the amount found due by Thomas Sewell in the settlement made by him as administrator in 1859. To this claim the estate of William Sewell interposed the plea of limitation. It further appeared that the widow of William Sewell, before 1859, and before the date of the settlement made by Thomas Sewell as administrator, married a man named Hargis, who was living at the time this claim was asserted; and it was sought to avoid the plea of the statute, upon the ground that at the time the action accrued and continuously since, the widow of William Sewell had been laboring under the disability of coverture. In holding that the statute barred the action so far as the widow was concerned, the court said:

"Her second marriage with John S. Hargis, her co-appellant, did not prevent the running of the statute, although that took place before the year 1859. The hus-

band in right of the wife, or in his own right, could have settled, receipted for, and collected this money at any time after the settlement. He was entitled to this fund by reason of the marriage, and the statute began to run as soon as this settlement took place. There is no reason, therefore, for holding that the coverture of the wife operated to prevent the running of the statute, when at no time during the twenty-five years next preceding the institution of this action were the parties precluded from suing, even at law, to recover of Thomas Sewell the widow's distributable share of the estate.''

In the Mouser case it appears that one P. J. Nunn was appointed guardian of Nancy T. Landon, in February, 1869. As guardian he made four settlements, the last in 1875. Nancy T. Landon married D. A. Mouser in 1873. In 1906 Nunn died, and in 1907 Nancy Mouser brought suit to recover the amount shown to be due her as ward by the settlement of P. J. Nunn made in 1875. In holding that the plea of limitation defeated the action, the court said:

''Her husband had a right of action against the guardian, and the limitation ran against him from the date of that settlement. This identical question was decided in Hargis v. Sewell's Admr. * * * In that case, at the time the settlement took place, the beneficiary was married, and yet the court held that, inasmuch as her husband was entitled to this money, she could not avoid the effect of the plea of the statute of limitation by reason of her coverture.''

We are unable to make any distinction between these cases and the one we have. In this case, when the note executed to Ida Hansbrough matured, she was a married woman. The cause of action accrued more than twenty years before this suit was brought, but her coverture during all this time did not suspend the running of the statute, because the right of action on the note was in her husband from the time of its maturity in 1890 until the Weissenger law went into effect in 1894, and thereafter the cause of action was in her. As the statute commenced to run at the maturity of the note, it continued to run.

But it is said that the pleading, to which a demurrer was sustained, averred that Efird had never reduced this note to possession, and this being admitted by the demurrer, no cause of action ever existed in her husband.

The fact, however, that the note may never have been reduced to possession by the husband is not controlling in the disposition of the question we have. He had a right to reduce the note to possession between 1890 and 1894, and consequently the right to maintain an action on it; so that there was during this period a person who was laboring under no disability and who had the right to bring an action on this note.

It does not appear in either the Sewell or the Mouser case that the husband had reduced the fund sought to be recovered to possession, but notwithstanding this limitation was held to run, because he had the right of possession and therefore the right of action. The question does not turn on whether the husband has reduced the chose in action of his wife to possession, but on the question whether there was a right of action in him that he could have asserted; and that he could have asserted this right and have brought a suit on this note, there can be no doubt. If he did not choose to reduce the note to possession, then it continued to be the property of his wife, and at her death would pass to her estate, as was held in Boughner v. Sharp, 144 Ky., 320.

It should be kept in mind that the statute begins to run when there is a person free from disability who may maintain the action. Whether he does bring it or not, does not affect the question of the running of the statute. If the mere failure of a person, who had a right of action to assert it, suspended the running of the statute during the time of such failure, it is obvious that the statute could always be suspended by the mere failure of the person who had the right of action to assert it, and this of course would be, in effect, setting the statute of limitation aside.

It is further insisted by counsel for appellant that the promises made by Hansbrough to pay the note at different times within the fifteen years next before the suit was brought, and his repeated acknowledgment of the debt, removed the bar of the statute not only as to Hansbrough but as to the lien on the land. But this contention has been repeatedly denied by this court. This question first came up in Tate v. Hawkins, 81 Ky., 577. In that case it appears from the opinion that in July, 1861, Hawkins, as part of the purchase price of land, executed to Jennings his note payable March 1, 1863, with a lien reserved in the deed to secure payment. In

1864 Jennings' executor assigned the note to Tate, the appellant, and on the same day Hawkins sold the land to Baskett, who, after paying the full consideration, took possession and held it until 1875, when he sold it to the appellee, Milner, who paid him the purchase price. In 1881 suit was brought against Hawkins and Milner to recover personal judgment against Hawkins and to enforce the lien retained in the deed from Jennings and subject the land to its payment. No defense was made by Hawkins, but Milner, on the ground that the lien was barred by the statute, resisted enforcement of the lien, and judgment was rendered dismissing the petition as to him. It further appeared that Hawkins made several payments on the note, subsequent to 1864, one of them before the fifteen year statute had run and another afterwards. The question in the case was, did the partial payments made by Hawkins that kept the note alive as to him, have the effect of suspending the running of the statute as to Milner? The court held that it did not and that the land of Milner could not be subjected to the payment of the note.

In Kendall v. Clarke, 90 Ky., 178, it appears that A. J. Royse executed to Nancy A. Jones a purchase money lien note payable in 1869. Clarke, as assignee of the note, brought suit on it in 1885 to enforce the vendor's lien. After Royse became the purchaser of the land, he sold portions of it to Campbell and others, and the question was, whether after the fifteen year statute had run, this land could be subjected to the vendor's lien. But the court held that although the note had been kept alive by payments subsequent to the sale by Royse, these payments did not have the effect of suspending the statute as to the owners of the land, and the right to subjection was barred by limitation.

In Clift v. Williams, 105 Ky., 559; Wise v. Wolf, 120 Ky., 263, and Walker v. Luxon, 138 Ky., 14, the rule announced in these cases was adhered to.

It is suggested that in the case of Cook v. Union Trust Co., 106 Ky., 803, the doctrine announced in Tate v. Hawkins and other cases that follow it, was modified, or rather a new feature not presented in these cases was developed that aids the case for Duvall. We have carefully read and considered the Cook case and do not find in it anything that would change the rule laid down in

Tate v. Hawkins in so far as that case controls the one we have.

In the Cook case the facts were these: In 1875 the executors of Hord conveyed to Bramel a tract of land, reserving a lien for the unpaid purchase money notes, which were assigned to Cook. In March, 1891, Bramel executed a mortgage on this land to the Union Trust Company. It appears that each year beginning in 1877 payments on these notes were made by Bramel; and it further appears that when the Union Trust Company took its mortgage, fifteen years had not elapsed from the maturity of the notes executed by Bramel; and the court held that as a number of payments were made by Bramel on the notes between the date of their maturity and the date of the mortgage to the trust company in 1891, these payments had the effect of elongating not only the liability of Bramel personally but the lien on the land. This upon the theory that the trust company took its mortgage burdened with the lien and the period of its enforcement existing at the time of the mortgage, and as the payments made before it took its mortgage had the effect of cutting off antecedent time, it followed that the fifteen year statute did not commence to run as to a lien against the land until 1891. To the same effect is Clift v. Williams, 105 Ky., 559.

In other words, the court held in the Cook case that where the person who purchased land and executed notes therefor made payments on these notes before they were due, and before he mortgaged or sold the land the fifteen year statute commenced to run against the purchaser or mortgagee, not from the date of the note, but from the date of the last payment before the sale or mortgage.

Now, in this case, in November, 1890, six months after the maturity of the notes executed to Ida Hansbrough, the mortgage to the Yager Brothers was executed by John Hansbrough, and in 1892 a judgment was entered ordering the sale under which Parepoint and Gardner purchased the land; and there is no claim that any payments or any promises to pay the debt had been made by John Hansbrough previous to these dates. So that at the time Yager Brothers took the mortgage, and at the time Parepoint and Gardner became the purchasers, nothing had been done to stop the running of the statute on this note. But even if payments or promises

to pay had been made by John Hansbrough prior to 1892, this would not affect the question here, because more than fifteen years had run after 1892 before this suit was brought.

The judgment is affirmed.