CASE 49—PETITION EQUITY—OCTOBER 16.

# McCracken County v. Mercantile Trust Co.

APPEAL FROM M'CRACKEN CIRCUIT COURT.

1. THE RIGHT TO PLEAD A STATUTE OF LIMITATION TO A PARTICULAR CAUSE OF ACTION IS A VESTED RIGHT when the bar has become complete, and that right can not be disturbed by subsequent legislation extending the time within which such actions may be brought.

2. THERE IS NO STATUTE OF LIMITATION AS TO LIENS, and if the claim to secure which the lien existed becomes barred, the lien dies with it.

WM. LINDSAY FOR APPELLANT.

By virtue of the act of February 12, 1872, to facilitate the collection of taxes in McCracken county, a *perpetual* lien attached to the lot in

McCracken County v. Mercantile Trust Co.

contest upon the levy and assessment of the taxes herein sought to be collected, and the act of 1884 was not intended to give a new right, but rather to preserve an old one. (Session Acts 1871-2, p. 338.)

L. D. HUSBANDS on same side.
    Brief not in record.

W. G. BULLITT for appellee.

1. A lien is a mere incident to the debt it secures, and when the debt is barred by limitation, the lien ceases to exist. (Yeates v. Weeden, 6 Bush, 439; Vandiver v. Hodge, 4 Bush, 539; Prewitt v. Wortham, 79 Ky., 287.)
2. The appellant's claim being barred by limitation, the Legislature had no power to remove that bar. (Constitution of Ky., art. 13, sec. 14; Smart v. Baugh, 3 J. J. Mar., 366.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The appellee, Marcella Laurie, was the owner, in 1873 and 1874, of a lot of land in McCracken county, which was assessed for taxation for those years for county purposes. The taxes remaining unpaid, the county collector, on December 17, 1874, sold the property to satisfy the amount owing for 1873; and on March 8, 1875, he again sold it for the taxes of 1874, the county in each instance becoming the purchaser at the price of the taxes due upon it. Subsequently, the Mercantile Trust Company purchased the property.

On the 18th day of February, 1884, the Legislature passed an act, the first section of which provides:

"That in all cases where real estate in McCracken county has been heretofore sold by any collecting officer, or by other proceedings on behalf of said county, for taxes due McCracken county, and bought by said county, it shall be lawful for said county, in its name, to file a petition in equity in the McCracken Court of Common Pleas, or other court of said county that may have civil equitable jurisdiction, against the

owner, his heirs, or assigns, or devisees (as the case may be), of such real estate so sold as aforesaid, and bought by said county, describing the same with reasonable certainty, and also make defendant to the suit the owner, by purchase, if any, of such real estate and all mortgages or other incumbrances, if any, of said land at the time suit was brought; and it shall be lawful for the county, the plaintiff in the suit, to subject such real estate IN REM by the judgment of the court, and have a sale of such land under the same for the satisfaction of the amount of the price at which the county may have bid off such real estate at the collecting officer's sale of the same, or under other proceedings, with interest thereon at six per cent. per annum, from the date of such sale until paid; and all costs of the action, including an attorney's fee of five dollars, which shall be taxed as costs in favor of the plaintiff in the action in every case of recovery. And the county of McCracken is hereby declared to have a continuing and subsisting lien upon the real estate for the satisfaction of the amount of such taxes, interest and cost aforesaid; *and in the enforcement of the same, as aforesaid, no plea of the statute of limitations shall be interposed thereto other than the statute of fifteen years.*"

This action was brought by the county on August 5, 1884, to enforce its alleged lien for the sums at which it had bid in the property at the collector's sales, and to sell the same therefor.

More than five years had elapsed from the time the taxes were due, and also from the date of the collector's sales, before the purchase by the Trust Company;

also before the passage of the act *supra*, and before the bringing of this action.

The general law in force during that time provides:

"An action upon a liability created by statute, when no other time is fixed by the statute creating the liability, * * * shall be commenced within five years next after the cause of action accrued." (General Statutes, chapter 71, article 3, section 2.)

The defense of five years' limitation was interposed; the county demurred to it, relying upon the provision in the act of February 18, 1884: "And in the enforcement of the same as aforesaid, no plea of the statute of limitations shall be interposed thereto other than the statute of fifteen years;" and its validity is now in question, the demurrer having been overruled.

It is clear that at the time of its passage the collection of the claim could not have been enforced. The defense to it was perfect. Had the Legislature the power to divest this right? The question is *res nova* in this State.

Beyond doubt it may, before a claim is barred under the existing law, extend the time for its enforcement. Upon the other hand, it may shorten it, provided it affords a reasonable time for its assertion.

It is urged, however, that time does not pay a debt; that the statute of limitation does not extinguish it, but merely relates to and withholds the remedy; and that as it is founded upon public policy, it is a matter bounded only by legislative discretion.

It is agreed upon all hands, that in cases where, by the lapse of time, a title to property is vested, that it can not be divested by the Legislature. This is not dis-

puted by any authority known to us, but some of them have attempted to draw a distinction between such a case and the enforcement of a mere debt or obligation, while others deny that any exists. It is true that in the one case the party in possession has been asserting a claim to the property; but in the case of a mere debt, the effect of its enforcement, when barred by time, would be to divest the owner of his property; and it seems to us that there is little difference in fact and none in principle whether the case relate to a claim to property *in specie*, or damages for the breach of a contract, or the enforcement of a debt merely.

A retrospective law, which divests a vested right, is beyond the constitutional limit of legislative power. If the legal right be gone, the contract is discharged until it is, in some legal way, reaffirmed; and when the constitutional test is applied by the courts, as is their duty, it must be held that the Legislature can not make a new contract for the parties.

Some confusion has arisen by the failure of writers and jurists, in speaking of the obligation of a contract, to distinguish between the *legal* right and the *moral* one.

Blackstone says "that wherever there is a legal right there is a legal remedy;" and "that the want of right and the want of remedy are the same thing."

Undoubtedly the legal remedy may be modified or changed without impairing the legal right, if the remedy in the new form be not impaired; but it seems to us that it is illogical to hold that the remedy may be destroyed and the legal right remain.

A legal right is one which is protected by law, and

the means of protection is the remedy ; and it is not to be supposed that one can have his legal right seized by another and yet be remediless. The existence of one implies the existence of the other, and one can not exist without the other. It must be kept in mind that we are now speaking of the *legal* right and not of the *moral* obligation. Both may exist, the one being based upon civil and the other upon natural law. The latter is not, therefore, affected by a statute of limitation which bars the remedy and destroys the legal right.

We are aware that it was held, in the earlier cases of Graves v. Graves, 2 Bibb, 207, and Chiles v. Calk, 4 Bibb, 554, that such a statute bars the remedy and not the right; but the later cases hold that it takes away the legal right, and they conform to sound reason, which says that when the law no longer protects a right or affords the means of enforcement, it necessarily dies. (Stanley v. Earl, 5 Littell, 281.)

In Carr's Ex'r v. Robinson, &c., 8 Bush, 269, it is said :

"If a promise was made after the running of the statute, this promise created a *new* obligation, and constituted a *new* cause of action, upon which suit should have been instituted. * * * After the lapse of fifteen years from the maturity of the note without suit, the obligation or note is regarded as *dead*, and it can not be revived by any promise to pay so as to authorize a suit on the original debt or obligation ; but if the promise is made during the fifteen years from the maturity of the note or obligation, it lengthens the *vitality* of the paper, and the statute commences to run from the date of the promise "

To the same effect is the case of Trousdale's Adm'r v. Anderson, 9 Bush, 277.

In Shelby County v. Scearce, 2 Duvall, 576, this language was used:

"The legal obligation of a contract is neither more nor less than a right to employ legal remedy to enforce or uphold the rights and duties of the parties to the contract. Wherever there is a legal remedy there is a legal obligation ; and wherever there is no legal remedy there is no legal obligation."

We conclude, therefore, that both upon sound reasoning and former opinions of this court, the statute of limitation of this State not only bars the remedy, but takes away the *legal* right.

It is, therefore, unnecessary to discuss the question whether the Legislature would have the power, if our statute of limitation merely barred the remedy, leaving the legal right in existence, to take from a person what has become a perfect defense to a claim or debt ; or to notice the cases upon the one side, which hold that it has the right to do so in such a case, or those upon the other adopting the contrary view.

Wood on Limitation, section 12, says: "If, before the statute bar has become complete, the statutory period is changed, and no mention is made of existing claims, it is generally held that the old law is not modified by the new, so as to give to both statutes a proportional effect; but that the time past is effaced, and the new law governs. That is, the period provided by the new law must run upon all existing claims in order to constitute a bar. In other words, the statute in force at the time the action is brought

controls, unless the time limited by the old statute for commencing an action has elapsed, while the old statute was in force, and before the suit is brought, in which case the suit is barred, and no subsequent statute can renew the right or take away the bar."

In Cooley's Constitutional Limitations, p. 455, it is said:

"Regarding the circumstances under which a man may be said to have a vested right to a defense against a demand made by another, it is somewhat difficult to lay down a comprehensive rule which the authorities will justify. It is certain that he who has satisfied a demand can not have it revived against him, and he who has become released from a demand by the operation of the statute of limitations is equally protected. In both cases the demand is gone, and to restore it would be to create a new contract for the parties— a thing quite beyond the power of legislation."

The legal demand is discharged, leaving nothing but a moral obligation, binding only in *foro conscientiae;* and hence a revival of it by legislative enactment involves not only the creation of a new obligation, but the violation of a vested right.

Puffendorf says: "A law can be repealed by the law-giver, but the rights which have been acquired under it while it was in force do not thereby cease." This was the rule of the civil law, and has been strictly adhered to in England, where there is no express restriction upon the legislative power.

In the States of Massachusetts, Michigan, Arkansas, Mississippi, Pennsylvania, Iowa, Indiana, Tennessee, New Hampshire, Wisconsin, Alabama, and perhaps

others, it has been held that the Legislature can not extend the time if the cause of action be already barred.

It is true that in some of these States the rule is based upon a clause in the State Constitution forbidding retrospective legislation. In others, the statute of limitation is held to extinguish the obligation, while in others the rule rests upon the broad ground that the defense having become perfect, it is a vested right, which can not be taken away by legislative action.

In the case of Girdner, &c., v. Stephens, 1 Heiskell, 280, it was said: "We hold, both on authority and principle, when a cause of action is barred by a statute of limitation in force at the time the right to sue arose, and until the time of limitation expired, that the right to rely upon the statute as a defense is a vested right that can not be disturbed by subsequent legislation."

In the cases of Right v. Martin, 2 Ind., 123; Baldro v. Tomlie, 1 Oregon, 176, and Brown v. Parker, 28 Wis., 21, it is held that a repealing act can not renew a liability that has already been extinguished; and in McKinney v. Springer, 8 Blackford, 506, and Rockport v. Walden, Ex'r, 54 N. H., 167, that no subsequent statute can renew a right to sue which is already barred.

Beyond question the Legislature can not take the property of one citizen and give it to another. Neither can it do so indirectly, by depriving one of the right to set up a defense perfect in him at the time.

It is a part of our fundamental law that no one can

be deprived of his property without due process of law. This not only requires that a party shall be brought into court, but that he shall have the opportunity when there to assert any defense to which he has become entitled, and which will protect his property.

We conclude that to hold the clause of the statute in question valid as to a claim, without legal existence at the time of its passage, would not only divest a party of a defense at the time perfect, but would make a new contract for the parties, and thus pass the constitutional limit of legislative action.

By the sixth section of an act of the Legislature, approved February 12, 1872 (Acts 1871-2, p. 339), it was declared that the county should have a perpetual lien on the property assessed for the tax until payment, and it is claimed, therefore, that there is no limitation as to its collection.

The fourth section of the act gave the county the right, in case it had purchased the property for the taxes, to enforce a lien against it therefor by a suit in equity, and sell the interest of the tax-payer therein. This lien was created when the assessment was made, and was but an incident of the tax claim or obligation. There is no statute of limitation as to liens. If the claim becomes barred, the lien dies with it. (Tate v. Hawkins, &c., 81 Ky., 577.) If the claim could be made an incident of the lien, then "the statute of repose" would be defeated. As the claim no longer legally existed, the lien had nothing to support its existence.

Judgment affirmed.