RENDERED: FEBRUARY 15, 2024
TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0308-DG

LINDA THOMPSON; RICK JACKMAN;                                              APPELLANTS
AND CITY OF LOUISVILLE/JEFFERSON
COUNTY METRO GOVERNMENT


                          ON REVIEW FROM COURT OF APPEALS
V.                                  NO. 2020-CA-0194
                     JEFFERSON CIRCUIT COURT NO. 18-CI-002551


SAMANTHA KILLARY                                                              APPELLEE


## OPINION OF THE COURT BY CHIEF JUSTICE VANMETER

## **REVERSING**

The law of the Commonwealth states, "[n]o statute shall be construed to be retroactive, unless expressly so declared." KRS[1] 446.080(3). Nevertheless, we permit retroactive application of statutes without explicit declaration when we are "absolutely certain the legislature intended such a result" or when the substance of the statute is remedial in nature and no new rights or duties are created. *Commonwealth Dep't. of Agric. v. Vinson*, 30 S.W.3d 162, 168 (Ky. 2000). Here, we are presented with a question regarding the retroactivity of two amendments to KRS 413.249, which establishes the statute of limitations

---

[1] Kentucky Revised Statutes.

for civil claims of childhood sexual assault and abuse. We hold that while the statute is remedial in nature and should be applied retroactively, Appellants hold a vested right in asserting a statute of limitations defense that is not overcome by the addition of a new triggering event and KRS 413.249 does not provide for the revival of time-barred claims.

## I. BACKGROUND

This matter arises from the more than a decade of sexual abuse Samantha Killary allegedly endured at the hands of her adoptive father, Sean Jackman. Sean adopted Killary around 1993 when she was two years old. In 1997, Sean engaged in a pattern of sexual abuse that would last until 2009, the same year Killary turned 18. In 2018, Sean was convicted of multiple criminal offenses related to the abuse. Throughout the period of abuse, Sean was a police officer with the Louisville Metro Police Department ("LMPD")[2], as was his father, Rick Jackman,[3] and Sean's girlfriend from 2001-2003, Linda Thompson.

In 2017, one year prior to the institution of this action, our General Assembly took the laudable action of reforming the statute of limitations for civil claims of childhood sexual abuse, extending the time limit from five years

---

[2] LMPD formed with the creation of the consolidated city-count government of Louisville in 2003. The record in unclear whether the Jackmans and Thompson worked for the Jefferson County Police Department or the Louisville Division of Police prior to the merger. However, the distinction is immaterial to this matter.

[3] Rick retired from the LMPD in 2000.

to ten years and adding a new triggering event: the conviction of the abuser. KRS 413.249(2)(d) (2017 amend.).

On May 2, 2018, Killary brought this action against the various persons and entities she alleges played a role in her abuse. Killary alleges Thompson may have participated in some of the abuse and that Rick, Thompson, and the Louisville Metro Government ("Metro") knew of the abuse and failed to take action to prevent it. Killary's complaint, thus, asserted both first-party claims against Sean and Thompson and third-party claims against Thompson, Rick and Metro. Finally, Killary asserts Metro is vicariously liable for the actions of its employees and brings additional claims for negligent hiring and intentional infliction of emotional distress. The claims other than those for childhood sexual abuse were dismissed and are not on appeal here.

Metro moved to dismiss the remaining charge on sovereign immunity grounds. Sean, Rick, and Thompson also sought dismissal, arguing that the action was time-barred by the 2007 version of KRS 413.249 which was in effect when that limitations period on Killary's claims began to run. The trial court granted both motions to dismiss, holding the 2017 version of the statute did not apply. Killary appealed the order.

During the pendency of the appeal, the legislature again amended KRS 413.249 in 2021. The General Assembly added language permitting suits against third parties, including entities such as Metro; expressly made the 2017 version of the statute retroactive; and seemingly provided for revival of all previously time-barred claims for childhood sexual abuse, among other things.

3

In a divided opinion, the Court of Appeals reversed the decision of the trial court. The majority held that the 2017 version of the statute applied and created a new triggering event as to Sean that caused the limitations period for the claims against him to run upon his conviction for the abuse. As such, Killary's claims against him were well within the statute of limitations. As to Metro, Rick and Thompson, the majority reasoned that they had a vested right in the old statute of limitations, KRS 413.140(1)(a) (2007 amend.), but not the new limitation period created by the 2021 amendments and thus remanded the matter to the trial court to determine whether those parties owed a duty to Killary under the present KRS 413.249(5). The Court of Appeals further instructed the trial court to determine whether the 2021 amendments waived sovereign immunity regarding Metro. A dissenting opinion argued that, except for Sean, the remaining parties' defenses, whether it be the statute of limitations or sovereign immunity, had vested by the time either the 2017 or 2021 amendments came into effect. Accordingly, the dissent believed the legislature lacked the power to divest Thompson, Rick, and Metro of their defenses to the claims against them and those parties were rightfully dismissed.

Thompson, Rick, and Metro, the Appellants herein, petitioned for discretionary review pursuant to CR[4] 76.20,[5] which this Court granted.

---

[4] Kentucky Rules of Civil Procedure.

[5] The provisions of CR 76.20 are now contained in Rule of Appellate Procedure ("RAP") 44.

## II. STANDARD OF REVIEW

The case before us presents only questions of law. Accordingly, we review KRS 413.249 and the applicable statute of limitations *de novo*. *Overstreet v. Kindred Nursing Ctrs. Ltd. P'ship*, 479 S.W.3d 69, 73 (Ky. 2015) (citing *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 810 (Ky. 2004)).

## III. ANALYSIS

At the outset, we believe that analysis of the 2021 amendments to KRS 413.249 is appropriate and necessary in this instance. Although typically, "[a] question not raised nor adjudicated in the circuit court will not be addressed by this court," *Benefit Ass'n of Ry. Emps v. Secrest*, 239 Ky. 400, 39 S.W.2d 682, 687 (1931), "[w]hen the facts reveal a fundamental basis for decision not presented by the parties, it is our duty to address the issue to avoid a misleading application of the law." *Mitchell v. Hadl*, 816 S.W.2d 183, 185 (Ky. 1991). Here, the parties did not argue the 2021 amendment before the trial court for the simple reason that the amendment had yet to come into existence. We believe that full adjudication of the issues on appeal requires us to address the now in-effect statutory provision, particularly because the issues presented here are purely legal and the various statutory amendments at play are so intertwined as to make ignoring the current version all but impossible.

The issues before us revolve around the various versions of KRS 413.249 that have been in force during the pendency of this action. Generally, KRS 413.249 sets forth certain procedural requirements for bringing a civil action for childhood sexual abuse or assault. Primarily at issue here, the statute sets

5

forth the applicable statute of limitations and provides certain triggering events that begin the running of the limitations period. Since the time the statute of limitations began to run on Killary's case in 2009 pursuant to the 2007 version of KRS 413.249, the statute has been amended three times: 2013, 2017, and 2021. The latter two amendments form the heart of this dispute.

At the time Killary's cause of action initially accrued, the statute then in force, the 2007 version, provided for a 5-year limitations period beginning upon the latest of three occurrences:

> (a) Within five (5) years of the commission of the act or the last of a series of acts by the same perpetrator;
>
> (b) Within five (5) years of the date the victim knew, or should have known, of the act; or
>
> (c) Within five (5) years after the victim attains the age of eighteen (18) years.

KRS 413.249(2) (2007 amend.). In Killary's case, the applicable period began on her 18th birthday sometime in 2009. Thus, at least as to the first-party claims against Sean and Thompson, Killary was required to bring her action during or before 2014.[6]

In 2017,[7] the legislature amended the statute to expand the limitations period to ten years and to add a new triggering event: "the conviction of a civil defendant for an offense included in the definition of childhood sexual abuse or

---

[6] Sean did not appeal the decision as to the claim against him and as such we do not address it further here.

[7] The 2013 amendment made only a minor change to the statute which is not relevant to this matter.

childhood sexual assault." KRS 413.249(2)(d) (2017 amend.).  The 2017 amendment did not contain retroactivity language.

Finally, in 2021, the General Assembly passed the current version of the statute.  This time, the legislature made significant changes, including a provision explicitly applying the 10-year limitations period to actions against third parties.  The current version also includes retroactivity language, albeit curiously phrased, as well as a codified provision for the revival of otherwise time-barred actions:

> (7) (a) As was its intention with the passage of 2017 Ky. Acts ch. 114, sec. 2, the General Assembly hereby states that the amendments enacted in 2017 Ky. Acts ch. 114, sec. 2 shall be applied retroactively to actions accruing before its effective date of June 29, 2017.  This section is a remedial statute which is to be given the most liberal interpretation to provide remedies for victims of childhood sexual assault or abuse.

> (b) Notwithstanding any provision of law to the contrary, any claim for childhood sexual assault or abuse that was barred as of March 23, 2021, because the applicable statute of limitations had expired is hereby revived, and the action may be brought if commenced within five (5) years of the date on which the applicable statute of limitations expired.

KRS 413.249(7).  Against this backdrop we must determine which of Killary's claims for childhood sexual abuse, if any, have made it past the shifting goalposts of the statute of limitations.

i.    **Retroactivity of the 2021 Amendments to KRS 413.249.**

In determining the meaning of a statute, "we . . . look first to the plain language of a statute and, if the language is clear, our inquiry ends."  *Univ. of Louisville v. Rothstein*, 532 S.W.3d 644, 648 (Ky. 2017).  "In interpreting a statute, '[w]e have a duty to accord to words of a statute their literal meaning

7

unless to do so would lead to an absurd or wholly unreasonable conclusion.'"
*Id.* (quoting *Cosby v. Commonwealth*, 147 S.W.3d 56, 59 (Ky. 2004)). "[T]here is a strong presumption that statutes operate prospectively and that retroactive application of statutes will be approved only if it is absolutely certain the legislature intended such a result." *Vinson*, 30 S.W.3d at 168. Nevertheless, the General Assembly is not required to recite "magic words" if the "enactment make[s] it apparent that retroactivity was the intended result." *Baker v. Fletcher*, 204 S.W.3d 589, 597 (Ky. 2006). Further, the rule against retroactive application does not extend to remedial statutes in which new rights and duties are not created. *Vinson*, 30 S.W.3d at 168. As we noted in *Stone v. Thompson*, 460 S.W.2d 809, 810 (Ky. 1970), "enactments prescribing limitations on time relate only to remedy[.]"

The relevant portion of KRS 413.249 addressing retroactivity can be found in subsection (7)(a):

> As was its intention with the passage of 2017 Ky. Acts ch. 114, sec. 2, the General Assembly hereby states that the amendments enacted in 2017 Ky. Acts ch. 114, sec. 2 shall be applied retroactively to actions accruing before its effective date of June 29, 2017. This section is a remedial statute which is to be given the most liberal interpretation to provide remedies for victims of childhood sexual assault or abuse.

KRS 413.249(7)(a). The wording of the section is curious; while the General Assembly explicitly made retroactive the 2017 amendment, the present version simply directs that the amendment be given the "most liberal interpretation." The legislature could have clearly stated the 2021 amendment's retroactivity

8

which, as a practical matter, would have had the same effect as what was drafted.[8]

That said, we believe it clear the General Assembly intended the 2021 amendment to be applied retroactively. Although unambiguous language regarding retroactivity aids the Court in determining the legislature's intent, the lack of such language does not foreclose a statute's retroactive application—the legislature need not invoke such magical phrasing where its intent is otherwise clear. *Baker*, 204 S.W.3d at 597. KRS 413.249(7)(a) declares the statute remedial and to be accorded "the most liberal interpretation to provide remedies for victims of childhood sexual assault or abuse." As noted earlier,

> a remedial statute must be so construed as to make it effect the evident purpose for which it was enacted, so that if the reason of the statute extends to past transactions, as well as to those in the future, then it will be so applied although the statute does not in terms so direct[.]

*Peabody Coal Co. v. Gossett*, 819 S.W.2d 33, 36 (Ky. 1991) (quoting 73 Am. Jur. 2d *Statutes* § 354 (1974)). The General Assemble has at least made it clear that as a remedial provision, KRS 413.249 is meant to "extend to past transactions, as well as to those in the future" so that the maximum protection

---

[8] The General Assembly's choice of language is all the more perplexing considering *B.L. v. Schuhmann*, 380 F.Supp.3d 614, 640 (W.D. Ky. 2019), which held the 2017 amendment was retroactive, at least to the extent our jurisprudence on vested affirmative defenses permits. Our review of that case provides little reason to think we would have departed from its reasoning had the matter been presented to us, meaning the General Assembly sought to clarify that which was already clear in the current KRS 413.249(7)(a).

9

and consideration may be provided to victims of sexual abuse. The statute is, therefore, retroactive and can be applied to the claims brought by Killary.

### ii. **The General Assembly may not divest a vested right through legislation.**

Our holding that KRS 413.249 applies retroactively is not the end of the analysis. Although the General Assembly possesses the power to enact statutes that act retroactively, such application cannot interfere with rights that have already vested. The affirmative defense of an expired statute of limitation is one such right.

Our jurisprudence has long recognized that a party has a vested right to assert the running of a statute of limitation as a defense. The first indirect reference can be found in the case of *Davis v. Ballard,* 24 Ky. (1 J.J.Marsh) 563 (1829), which concerned the legislature's decision to remove three years from the calculation of the period in which an appeal from a judgment of the trial court could be brought.[9] Faced with the question of appeals previously foreclosed by the limitations period, the court denied the existence of a vested right in the running of the period to appeal, but also observed a difference between the statute at issue and one which would revive hitherto unpursued

---

[9] Specifically, the act provided, "that in writs of error, already sued out, or which may be hereafter sued out, that the period between the 31st day of November, 1824, and the 1st of April, 1827, shall be deducted from the time allowed by law, in any plea, motion or suit, in which the statute of limitation of writs of error may be plead or relied on." Presumably, the act was meant to remedy any confusion in the appellate process brought on by the Old Court-New Court Controversy during that same period. *See* Kurt X. Metzmeier, *History of the Courts of Kentucky* 6-7 (Berkley Electronic Press 2006), https://papers.ssrn.com/sol3/Delivery.cfm/SSRN_ID977597_code170891.pdf?abstractid=977597&mirid=1.

claims.  As to the latter, the court wrote that statutes of limitations, "originate in considerations of public policy, and when enacted to operate prospectively, promote the peace and well being of society, without invading the rights of any."  *Id.* at 573.

In *Cassity v. Storms*, 64 Ky. (1 Bush) 452 (1866), the court addressed an 1865 act suspending the statute of limitations in Bath County from 1861 "until law and order are again restored."  *Id.* at 454.  Faced with the question of whether a matter which became time-barred under a prior statute but was arguably revived by the 1865 act, the court explained,

> There can be no doubt but that the policy of limitations, as to when it shall or shall not bar further proceedings, or whether there shall be any limitations to causes of action, &c., are all within the sovereign control of the Legislature, and may be changed or repealed at any time; but such action of the Legislature cannot affect or divest vested rights.  So that, however omnipotent may be their control over such statutes, yet, when the bar is complete before the repeal, modification, extension, or suspension of such statutes, such alterations will never be construed as attempting to revive rights barred at the time of the new enactment, unless expressly so provided, and then its constitutional validity will be necessarily involved.

*Id.* at 453.  These cases reflect two relevant principles: (1) we will not construe a statute as reviving extinguished claims; and (2) when the language of the statute clearly intends revival of such claims, the constitutional validity of the statute becomes suspect.

From *Davis* and *Cassity*, our jurisprudence presents nearly 200 years of protection for those possessing a statute of limitations defense.  *See Davis v. Davis*, 4 Ky.Op. 602 (1870) ("the Legislature of the State may change, modify,

11

or repeal statutes of limitations at its will, so that it does not change, or injuriously affect, vested rights, rights perfected by the law before its modification, or repeal[]"); *McCracken Co. v. Mercantile Trust Co.*, 84 Ky. 344, 1 S.W. 585, 586 (1886) ("A retrospective law which divests a vested right is beyond the constitutional limit of legislative power[]"); *Lawrence v. City of Louisville*, 96 Ky. 595, 29 S.W. 450, 451 (1895) ("The lawmaking branch of the government has no more power to destroy a defense that has accrued than it has to take the citizen's property 'without due process of law[]'"); *Heath v. Hazelip*, 159 Ky. 555, 167 S.W. 905, 907 (1914) ("the Legislature cannot remove a bar of limitation which has already become complete"); *Leiserson & Adler, Inc. v. Keam*, 266 S.W.2d 352, 355 (Ky. 1954) ("It is beyond the power of the Legislature to revive an action which has abated prior to the passage of the statute[]"); *Louisville Shopping Center, Inc. v. City of St. Matthews*, 635 S.W.2d 307, 310 (Ky. 1982) ("It is clear that a legislative body may not arbitrarily, or without due process, by retroactive legislation terminate or impair the judicial rights of a litigant. Such rights are described and viewed as vested[]" (internal citations omitted)); *William A. Pope Co. v. Howard*, 851 S.W.2d 460, 462 (Ky. 1993) ("An amendment of a statute of limitations will not revive a cause of action previously expired[]"); *Johnson v. Gans Furniture Indus., Inc.*, 114 S.W.3d 850, 854-55 (Ky. 2003) ("Although an amendment that extends the period of limitation may be applied to a claim in which the period has not already run, it may not be applied to revive a claim that has expired without impairing vested rights[]").

12

The aforementioned jurisprudence resolves the question of whether Killary's claims were time-barred at the time she brought this action. The Court of Appeals reasoned her claims were not so barred because "[KRS. 413.249](2)(d) was in effect and gave her a term of limitations of ten (10) years from Sean's conviction, which was finalized with his sentencing in 2018." *Killary v. Thompson*, 2022 WL 2279865, at *4 (Ky. App. June 24, 2022). In other words, even though the statute of limitation in force at the time the acts were committed terminated, at latest, 5 years from Killary's 18th birthday (2014), the 2017 and 2021 amendments restarted the clock in 2018.

We disagree with the Court of Appeals. Setting aside the practical matter of how the trial court was to determine that the third-party claims against Appellants were subject to a ten-year limitations period when that statute did not exist at the time it ruled on the Motions to Dismiss, to accept the Court of Appeals' conclusion would create an impermissible end-run around our long-standing jurisprudence on an individual's vested right in the assertion of the statute of limitations defense, discussed *supra*. When the statute of limitations expired on the claims of sexual abuse brought against Appellants, the legislature became powerless to restart the clock by extending the limitation period or by adding a new trigger. To hold otherwise would create an exception that would swallow the rule against divestment of perfected defenses. Accordingly, the creation of a new trigger in 2017 did nothing to revive the claims against Appellants, all of whom at that time possessed a vested right in

13

the assertion of a statute of limitations defense to Killary's childhood sexual abuse claims.

### iii. **KRS 413.249(7)(b)**

This brings us to the language of KRS 413.249(7)(b), in which the General Assembly provided for such revival:

> Notwithstanding any provision of law to the contrary, any claim for childhood sexual assault or abuse that was barred as of March 23, 2021, because the applicable statute of limitations had expired is hereby revived, and the action may be brought if commenced within five (5) years of the date on which the applicable statute of limitations expired.

KRS 413.249(7)(b).

Notably, the Legislative Research Commission ("LRC") note and the language of the Act which amended the statute, 2021 Ky. Acts ch. 89, sec. 3, both limit the 2021 amendment to "causes of action accruing on or after [March 23, 2021], and to causes of action accruing before [March 23, 2021], if the applicable statute of limitations, as it existed prior to [March 23, 2021], has not yet run before [March 23, 2021]." Killary urges this Court to view this limiting language as non-instructive as to the intent of the legislature, and instead to focus solely on the statutory language.

The applicability of an LRC note that places temporal limits on a statute's application has been recently addressed by this Court. At issue in *Holcim v. Swinford*, 581 S.W.3d 37 (Ky. 2019) was a workers' compensation statute which limited the applicability of the statute to those actions occurring after December 12, 1996, and which "have not been fully and finally adjudicated, or are in the appellate process, or for which time to file an appeal

14

has not lapsed, as of the effective date of this Act." *Id.* at 43.[10] The codified language of the statute itself did not contain this limitation, but it did appear as an LRC note. We held the LRC note to be indicative of the legislature's intent as to the extent of the statute's retroactivity, noting that KRS 7.131(3) allows the LRC to "omit all laws of a private, local, or temporary nature." *Id.* at 44.

In *Martin v. Warrior Coal LLC*, 617 S.W.3d 391 (Ky. 2021), the Court again was presented with a workers' compensation statute whose LRC note contained an uncodified temporal limit.[11] In that case, we followed the analysis of the *Holcim* court, observing that "under KRS 7.131(3), if the language is properly characterized as a law of a temporary nature, there is no requirement that the language must be codified in the official version of the Kentucky Revised Statutes in order to be relied on." *Id.* at 399. Accordingly, the non-codified language of the Act as applied in the LRC note reflected the legislature's intent "regardless of whether that clear language finds its way into the actual statute." *Id.* at 400.

---

[10] In full, the Note appended to KRS 342.730 reads, "This statute was amended in Section 13 of 2018 Ky. Acts ch. 40.... Subsection (3) of Section 20 of that Act reads, "Subsection (4) of Section 13 of this Act shall apply prospectively and retroactively to all claims: (a) For which the date of injury or date of last exposure occurred on or after December 12, 1996; and (b) That have not been fully and finally adjudicated, or are in the appellate process, or for which time to file an appeal has not lapsed, as of the effective date of this Act."

[11] The LRC note in KRS 342.040 reads, "2017 Ky. Acts ch. 17, sec. 5 provided that amendments made to this statute in 2017 Ky. Acts ch. 17, sec. 2 apply to all worker's compensation orders entered or settlements approved on or after June 29, 2017, the effective date of that Act."

In this case, the non-codified language of 2021 Ky. Acts ch. 89, sec. 3, as repeated in the LRC note to KRS 413.249, is of the same character as the language addressed in *Holcim* and *Martin*. Indeed, it tracks the language addressed in *Holcim* almost exactly. The LRC note encompasses cases which accrued prior to the Act's effective date and whose statutes of limitations have not yet run. For causes of action which accrue after March 23, 2021, this language is not necessary. Because the legislature is not required to codify such "temporal scope" language, KRS 7.131(3), the language of the Act as stated in the note reflects the intent of the legislature, regardless of whether it is codified into the statute. "Legislative intent is legislative intent." *Martin*, 617 S.W.3d at 400. Because the claims against Appellants were time-barred at the time of the 2021 amendment's enactment, KRS 413.249(7)(b) does not act to revive those claims.[12]

## IV.   CONCLUSION

This Court is obligated above all else to effectuate the intent of the legislature in accordance with our long-standing jurisprudence. As our predecessor court eloquently put it,

> To decide questions of this character, is often an unpleasant task; but when they are fairly presented, they should be disposed of, with that moral firmness, which arises from pure motives, and a conscious devotion to official duty. The fear of displeasure and the

---

[12] Even if KRS 413.249 lacked the LRC note, the revival of time-barred claims is clearly prohibited by the principals expressed in the long-line of cases cited earlier in this opinion. The LRC note, then, merely reflects what we already assume about the legislature: that it "knows and understands the then-existing laws, including the judicial construction of those laws." *Castle v. Commonwealth*, 411 S.W.3d 754, 758 (Ky. 2013).

hope of temporary applause, should have no place in the bosom of the judge.

For the foregoing reasons, we reverse the Court of Appeals, and affirm the ruling of the Jefferson Circuit Court dismissing the claims against Linda Thompson, Rick Jackman, and Louisville Metro Government.

All sitting. Conley, Lambert, and Thompson, JJ., concur. Keller concurs in result only. Nickell, J., concurs by separate opinion in which Thompson, J., joins. Bisig, J., concurs in part and dissents in part by separate opinion.

NICKELL, J., CONCURRING: I fully concur with the majority's decision to reverse the Court of Appeals and reinstate the dismissal of Killary's claims against Linda Thompson, Rick Jackman, and Louisville Metro. In my view, the majority correctly recognized that Kentucky law has long deemed a ripened limitations defense to be a vested right beyond the power of the legislature to impair. I write separately to underscore the constitutional and historical sources of the Kentucky rule which amply justify our divergence from contrary federal authority.

Admittedly, this Court has often held the right to due process of law under the Kentucky Constitution is co-extensive with the due process clause of the Fourteenth Amendment to the United States Constitution. *Gasaway v. Commonwealth*, 671 S.W.3d 298, 333 (Ky. 2023).[13] However, we may properly

---

[13] In a variety of contexts, I have also interpreted the right to due process under the Kentucky Constitution to align with federal due process rights. *See Graham v. Adams*, --- S.W.3d ---, 2023 WL 8640825 at *24 (Ky. December 14, 2023) (Nickell, J., concurring in part, dissenting in part) ("Kentucky courts have long interpreted the scope of Section 2 consistently with federal equal protection and due process protections."); *Cameron v. EMW Women's Surgical Ctr.*, P.S.C., 664 S.W.3d 633, 687

diverge from interpretations of comparable federal constitutional rights "where the dictates of our Kentucky Constitution, tradition, and other relevant precedents call for such action." *Commonwealth v. Cooper*, 899 S.W.2d 75, 78 (Ky. 1995) (quoting *Holbrook v. Knopf*, 847 S.W.2d 52, 55 (Ky. 1992)). Under Kentucky law, the steadfast treatment of a ripened limitations defense as a vested right unmistakably compels our continued adherence to this foundational principle on the merits and as a matter of stare decisis.

Binding Kentucky precedent on whether a legislature may retroactively revive a time-barred claim has long conflicted with federal authority. As early as 1885, the United States Supreme Court declared, "[w]e certainly do not understand that a right to defeat a just debt by the statute of limitations is a vested right, so as to be beyond legislative power in a proper case." *Campbell v. Holt*, 115 U.S. 620, 628 (1885). On the contrary, the decisions of our predecessor Court explicitly viewed a ripened limitations defense as a vested right beyond legislative control both before and after the *Campbell* decision. *Davis v. Ballard*, 24 Ky. (1 J.J.Marsh) 563 (1829); *Cassity v. Storms*, 64 Ky. (1 Bush) 452 (1866); *McCracken Co. v. Mercantile Trust Co.*, 84 Ky. 344, 1 S.W. 585, 586 (1886); and *Lawrence v. City of Louisville*, 96 Ky. 595, 29 S.W. 450, 451 (1895). Importantly, the reasoning of the Kentucky *Lawrence* decision specifically mirrors that of the dissent in *Campbell* which observed

---

(Ky. 2023) (Nickell, J., concurring in part, dissenting in part) ("Our approach to the determination of fundamental rights was consistent with the guidance of the United States Supreme Court in *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997).").

18

> I am unable to yield assent to any of the specious arguments advanced to show that the defense of the statute, when it has once vested, is an imperfect right which the legislature may, at its mere will, abrogate and take away. I think it is then a vested right, and that vested rights are a species of property which the fourteenth amendment of the constitution was intended to protect from adverse state legislation.

115 U.S. at 632 (Bradley, J., dissenting); *cf.* 29 S.W. at 451 ("The lawmaking branch of the government has no more power to destroy a defense that has accrued than it has to take the citizen's property 'without due process of law.'"). The *Lawrence* decision also cited the preeminent jurist and scholar, Thomas M. Cooley, for the proposition that "[i]t is certain that he who has satisfied a demand cannot have it revived against him, and he who has become released from a demand by the operation of the statute of limitation is equally protected." 29 S.W. at 452 (citation omitted). Indeed, the holding of the Supreme Court's *Campbell* majority has long been considered an outlier by legal commentators because "the practical result of the distinction drawn in *Campbell v. Holt* was so contrary to the conception of 'vested right' as entertained by the courts and public alike, that it is generally avoided by refusal on other grounds to allow a revival of barred actions." Comment, *Campbell v. Holt—A Rule or an Exception?*, 35 Yale L.J. 478, 482 (1926). Dean James Barr Ames also maintained that a legislature cannot revive a claim where the statute of limitations has expired and further bluntly noted, "[t]he case of *Campbell v. Holt . . .* stands almost alone." James Barr Ames, "Disseisin of Chattels," 3 *Select Essays in Anglo-American Legal History* 569 n.1 (1909) (internal citation omitted).

19

The divergence between Kentucky and federal law on this point has continued to the present day. In *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314 (1945), the Supreme Court reaffirmed its decision in *Campbell* and further concluded "that lifting the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is [not] per se an offense against the Fourteenth Amendment." *Id.* at 316. Yet, the Supreme Court also specifically identified the decision of our predecessor Court in *Jackson v. Evans*, 284 Ky. 748, 145 S.W.2d 1061 (1940), along with the decisions of several other state courts that

> have not followed [*Campbell*] in construing provisions of their constitutions similar to the due process clause. Many have, as they are privileged to do, so interpreted their own easily amendable constitutions to give restrictive clauses a more rigid interpretation than we properly could impose upon them from without by construction of the federal instrument which is amendable only with great difficulty and with the cooperation of many States.

*Id.* at 312-313 (footnote omitted). In the intervening decades, the decisions of this Court have continuously applied the Kentucky rule without regard to contrary federal jurisprudence. *Leiserson & Adler, Inc. v. Keam*, 266 S.W.2d 352, 355 (Ky. 1954); *Louisville Shopping Center, Inc. v. City of St. Matthews*, 635 S.W.2d 307, 310 (Ky. 1982); *William A. Pope Co. v. Howard*, 851 S.W.2d 460, 462 (Ky. 1993); *Johnson v. Gans Furniture Industries, Inc.*, 114 S.W.3d 850, 854-55 (Ky. 2003). I fail to discern any exceptions or errors contained in the rule established by this long line of Kentucky precedent.

In the present appeal, the legislature clearly possessed a laudable policy basis in attempting to revive expired claims of sexual abuse. However, the

20

desirability of this policy preference is not the question before us. Instead, the question is whether the legislature has the constitutional authority to impair the vested right inherent in a ripened limitations defense. Over 200 years of sound Kentucky jurisprudence convinces me that it does not. Unlike valid impositions on the fundamental rights of life and liberty which presuppose a legitimate exercise of the police power, "[t]here can be no divesting of vested rights by legislative fiat." *Compare Posey v. Commonwealth*, 185 S.W.3d 170, 175 (Ky. 2006) with 16B Am. Jur. 2d *Constitutional Law* § 743 (2023). Thus, since a ripened limitations defense is equivalent to immunity from suit under Kentucky law, then legislation which impairs this vested right itself amounts to a taking of property without due process of law. *See Lawrence*, 29 S.W. at 451; 16B Am. Jur. 2d *Constitutional Law* § 742 (2023).

In my view, statutes of limitations cannot be reduced to a mere technicality. "On the contrary, they have long been respected as fundamental to a well-ordered judicial system." *Bd. of Regents of the Univ. of N.Y. v. Tomanio*, 446 U.S. 478, 487 (1980). While I share Judge Maze's sympathy with "the General Assembly's clearly expressed intention to expand the remedies available to victims of childhood sexual abuse," I also share his position that "the General Assembly was not authorized to revive causes of action where the applicable limitation period lapsed prior to enactment of the statutory amendment." *See Killary v. Thompson*, No. 2020-CA-0194-MR, 2022 WL 2279865 at *11 (Ky. App. June 24, 2022) (Maze, J., dissenting). The rule of law demands impartial and uniform application which in turn "promote[s] stability

21

in the law and the integrity of judicial decision-making." *Cameron v. EMW Women's Surgical Ctr. P.S.C.*, 664 S.W.3d 633, 709 (Ky. 2023) (Nickell, J., concurring in part, dissenting in part). Once we stray from the wisdom of our firmly rooted Kentucky precedent—that it is unjust in itself for the legislature to impair the vested right in a limitations defense—then the rule of law has morphed into an impermissible question of discretion. *See Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 857 (1990) (Scalia, J., concurring). Therefore, I concur in full with the majority and for the additional reasons expressed by this separate opinion.

Thompson, J., joins.

BISIG, J., CONCURRING IN PART AND DISSENTING IN PART: Today's majority decision thwarts the General Assembly's express intention to revive civil childhood sexual abuse claims. The legislature's efforts to revive those claims were not only laudable, but also in furtherance of a compelling governmental interest, narrowly tailored, and wholly within constitutional limits. By failing to give effect to that express intention, today's decision again gives a windfall to the perpetrators and enablers of childhood sexual abuse, who once more reap the wholly unjust benefit of avoiding liability on the legal technicality of an expired statute of limitations. Therefore I respectfully dissent.

I agree with much of the majority's well-written opinion, including its conclusions that we must consider the 2021 amendment to KRS 413.249 even though that amendment became effective during the course of the present

22

appeal, and its ultimate conclusion that the trial court properly dismissed the claims against Metro.[14]  However, I must respectfully dissent from the majority's conclusion that the General Assembly did not—and under no circumstances could not—deprive Rick and Thompson of their vested right to raise a statute of limitations defense.  As such, though I differ in reasoning from the Court of Appeals, I would nonetheless affirm its conclusion that this matter should be remanded to the circuit court for consideration of the claims against Rick and Thompson, and reverse the Court of Appeals' remand of the claims against Metro as Metro enjoys sovereign immunity.

## I.     The 2021 Amendment's Codified Claim-Revival Provision Takes Precedence Over Its Uncodified Provision Limiting the Statute to Unexpired Claims.

As the majority acknowledges, the 2021 amendment expressly states the General Assembly's intention to revive expired civil childhood sexual abuse claims.  Indeed, the amendment expressly states:

> Notwithstanding any provision of law to the contrary, any claim for childhood sexual assault or abuse that was barred as of March 23, 2021, because the applicable statute of limitations had expired is hereby revived, and the action may be brought if commenced

---

[14] Given its conclusion that Appellants have an unassailable vested right in the expired statute of limitations, the majority does not reach the issue of whether Metro is entitled to sovereign immunity.  Stated briefly, I would find that Metro is entitled to sovereign immunity from Killary's claims. While the 2021 amendment may waive that sovereign immunity, and while that amendment may also revive *expired* causes of action, there is no express language in the statute indicating that the *waiver of sovereign immunity* was intended to apply retroactively.  Thus, because waivers of sovereign immunity are strictly construed, I would find Metro entitled to sovereign immunity from Killary's claims that accrued and were filed before any such waiver. *See Jones v. Cross*, 260 S.W.3d 343, 345 (Ky. 2008) ("Statutes in derogation of the state's sovereign immunity will be strictly construed in favor of the state unless the intention of the legislature to do otherwise is clearly expressed in the statute.").

within five (5) years of the date on which the applicable statute of limitations expired.

KRS 413.249(7)(b). Without doubt, this language makes crystal clear the legislative goal of giving new life to previously dead claims.

Yet the majority concludes that an uncodified limiting provision of the 2021 amendment overrides this express—and codified—statement of the General Assembly's intention to revive expired claims. I disagree.

The uncodified provision is directly contrary to the express revival provision, stating that the 2021 amendment applies

> to causes of action accruing on or after the effective date of this Act, and to causes of action accruing before the effective date of this Act, *if the applicable statute of limitations, as it existed prior to this Act, has not yet run before the effective date of this Act.*

2021 Ky. Acts ch. 89, § 3 (emphasis added). Admittedly, although not codified, this limiting language nonetheless has force of law because it is a temporary provision defining the temporal scope of the statute. KRS 7.131(3); *Holcim v. Swinford*, 581 S.W.3d 37, 44 (Ky. 2019); *Martin v. Warrior Coal LLC*, 617 S.W.3d 391, 399-400 (Ky. 2021). We are thus seemingly faced with two plainly conflicting provisions of law set forth within the same statute: a provision stating that the 2021 amendment *revives* expired causes of action, and a provision stating that the amendment *does not apply* to expired causes of action.

The 2021 amendment's claim-revival provision is an unusual feature not seen in many statutes. Moreover, it appears in a section of the statute in which the General Assembly specifically expressed its intentions regarding

retroactivity. I thus have little trouble concluding the revival provision of the 2021 statutory amendment was a purposeful and intentional act by the General Assembly.

In contrast, the provision stating that the amendment does *not* apply to expired claims appears at the end of the Act, amid a string of other commonplace boilerplate provisions regarding matters such as severability of provisions determined to be invalid and the effective date of the Act. *See* 2021 Ky. Acts ch. 89, §§ 3, 5-6. Moreover, this limiting provision is patently inconsistent with the plainly intentional claim-revival provision. As such, I conclude the uncodified limiting provision was included in the Act by mistake, as it relates to the rather commonplace issue of temporal scope and is plainly inconsistent with the civil claim-revival provision.[15]

---

[15] The Act not only amended provisions of KRS 413.249 regarding civil claims of childhood sexual abuse, but also extended the limitations period set forth in KRS 500.050 for prosecution of misdemeanor criminal sex offenses against minors. 2021 Ky. Acts ch. 89, § 1. At least one apparent and proper purpose of the provision limiting application of the Act to unexpired claims is to recognize that the newly extended *criminal* misdemeanor limitations period may not be applied to revive expired *criminal* misdemeanor charges. Such a retroactive revival of an expired criminal statute of limitations would violate the constitutional prohibition against *ex post facto* criminal laws. *Stogner v. California*, 539 U.S. 607, 610 (2003) (holding that statute authorizing "criminal prosecutions that the passage of time had previously barred" violated *ex post facto* clauses).

Thus, there appears to be no mistake in the limiting provision at least insofar as the General Assembly intended to limit application of the Act *in the criminal context* to "causes of action accruing before the effective date of this Act, if the applicable statute of limitations, as it existed prior to this Act, has not yet run." 2021 Ky. Acts ch. 89, § 3. However, the constitutional prohibition against *ex post facto* laws does not apply to civil claims, and thus to the extent the limiting provision states the amendment reviving expired *civil* claims does not apply to expired claims, it is plainly contradictory and mistaken. *See City of Villa Hills v. Kentucky Ret. Sys.*, 628 S.W.3d 94, 111 (Ky. 2021) (noting that prohibition on *ex post facto* laws generally has no application to civil matters).

25

We are not without remedy when faced with plainly mistaken statutory language. In interpreting a statute, we

> must be guided by the intent of the legislature in enacting the law. No single word or sentence is determinative, but the statute as a whole must be considered. In order to effectuate the legislative intent, words may be supplied, omitted, substituted, or modified. The purpose is to give effect to the intent of the legislature.

*Landrum v. Commonwealth ex rel. Beshear*, 599 S.W.3d 781, 788 (Ky. 2019) (quoting *Cnty. of Harlan v. Appalachian Reg'l Healthcare, Inc.*, 85 S.W.3d 607, 611 (Ky. 2002)). Thus, where we conclude statutory language is plainly the result of mistake rather than legislative intent, we

> have the power and authority to correct [it] when so plainly apparent, in order to carry out and enforce what was plainly the intent and purpose of the Legislature, and especially so when it may be done so as not to impair or in any wise modify such intent and purpose. The universal rule is that in constructing statutes it must be presumed that the Legislature intended something by what it attempted to do, and, further, than any clearly apparent mishap in the insertions or omission of a word or words or punctuation which would destroy or impair what is otherwise the plain intent and purpose should be eliminated, and, if necessary to carry out that intent and purpose, such omissions may be supplied by the courts. When such authority is exercised within such limitations, it does not transgress the rule that courts should not legislate, but only construe.

*Grieb v. Nat'l Bond & Inv. Co.*, 264 Ky. 289, 94 S.W.2d 612, 616-17 (1936); *see also Commonwealth v. Grinstead*, 108 Ky. 59, 55 S.W. 720, 724 (1900) (noting that courts may reject statutory language that is "a manifest contradiction of the apparent purpose of the enactment.").

Here, the statute's limiting provision was plainly mistaken at least insofar as it contradictorily purports to bar application of the statute's civil claim-revival provision to expired civil claims. In considering Killary's civil

26

childhood sexual abuse claims, I would thus give effect to the claim-revival provision in order to effectuate the General Assembly's plain intent for the 2021 amendment to revive expired civil childhood sexual abuse claims.

## II. The General Assembly's Revival of Civil Childhood Sexual Abuse Claims Is Legally Permissible and Within Constitutional Limits.

I also disagree with the majority's conclusion that the General Assembly is wholly barred from reviving the expired statutes of limitations at issue in this case. I take no quarrel with the majority's assertion that a party's ability to raise the defense of an expired statute of limitations is a vested right. As the majority's historical analysis makes plain, we have long recognized that a party released from obligation on a claim by operation of the statutes of limitations enjoys a vested property right in the extinguishing of that obligation. We have framed that right as "a right to withhold . . . property from subjection to a demand." *Lawrence v. City of Louisville*, 96 Ky. 595, 29 S.W. 450, 452 (1895). Early on, we thus held that the legislature generally cannot divest a holder of that right. *Id.*

Notably, however, we also held early on that this limitation on legislative power is *not* without exception: "He is, then, beyond the power of the legislature to divest him of his rights therein, *except by* his consent or *due process of law.*" *Id.* (emphasis added). This "except" language is clearly intended to carve out a limited exception to the general rule of the primacy of the vested rights analysis. The unique and grave nature of childhood sexual assaults compels me to further explore this exception.

27

It is widely recognized that victims of childhood sexual abuse often face a daunting series of obstacles in the quest to bring civil claims before expiration of the statute of limitations.  Indeed, as one of the authors of the 2021 amendment, Representative Lynn Bechler, noted in the press,

> [m]ultiple studies show that most children who experience sexual abuse do not disclose it, or significantly delay reporting it.  Because of the existing statute of limitations on these crimes, this often leaves many adult victims of childhood sexual abuse without recourse.

Lynn Bechler, Opinion, *Bechler legislative update*, The Times Leader (Princeton, Ky.), Mar. 24, 2021.  Representative Bechler further noted that the Act "gives the victims more time to seek justice for these heinous crimes." *Id.*  Governor Beshear echoed that sentiment in his Executive Message accompanying his signature of the Act, noting that

> [m]ost children, in particular the very young, do not disclose abuse in real time. . . . we must do everything we can to create the safe pathways so that survivors of childhood sexual abuse feel empowered to make their voices heard and tell their stories in their own time, while ensuring we can still hold the perpetrators accountable.

Kentucky Governor's Message, 2021 Reg. Sess. H.B. 7.

The governmental interest in providing relief from such overwhelming unjust circumstances is evident and undoubtedly compelling.

Other more recent cases might be read to suggest that the legislature may *never* revive an expired cause of action, even where so doing would not violate due process protections.  *See Johnson v. Gans Furniture Indus., Inc.*, 114 S.W.3d 850, 854-55 (Ky. 2003) ("[A]n amendment . . . may not be applied to revive a claim that has expired without impairing vested rights."); *Officeware v.*

28

*Jackson*, 247 S.W.3d 887, 890 (Ky. 2008) ("[A]n amendment . . . may not revive a limitations period that has expired."). I consider these cases to merely state the general rule that the legislature may not revive expired causes of action, while neglecting to reference the attendant exception that the legislature *may* revive expired causes of action where doing so comports with due process. The Court, as it frequently does, must balance governmental objectives with individual rights. Given the ambiguity arising from these cases, I would take the opportunity today to clarify that the legislature is prohibited only from reviving expired claims where doing so would offend constitutional due process limits. *Lawrence*, 29 S.W. at 452. Indeed, it defies common sense to hold that while our criminal laws allow one to be deprived of liberty or even life by due process of law, a vested property right in a statute of limitations defense is nonetheless wholly beyond the reach of legislative action, without exception. *See Cantrell v. Kentucky Unemployment Ins. Comm'n*, 450 S.W.2d 235, 237 (Ky. 1970) ("When all else is said and done, common sense must not be a stranger in the house of the law."). Put simply, there is no *categorical* constitutional prohibition against the General Assembly reviving causes of action extinguished by operation of the statutes of limitations. Particularly where, as here, the legislature was keenly aware of the delayed reporting of abuse that happens to young children. To the extent *Johnson* and *Officeware* might be read to hold otherwise, I would overrule them.[16]

---

[16] In *Leiserson & Adler, Inc. v. Keam*, 266 S.W.2d 352, 355-56 (Ky. 1954), we held that "[o]ne has a vested right in a defense . . ., and any statute which takes away this defense and creates a new obligation in respect to transactions already terminated

29

Today, I would therefore again reiterate what we held long ago: Under Kentucky law, the General Assembly *may* revive expired causes of action so long as in so doing, it does not violate due process protections. The 2021 amendment's claim-revival provision commits no such violation.

Section 2 of the Kentucky Constitution enshrines our due process protections, which include both a procedural and a substantive component. *Stephens v. State Farm Mut. Auto. Ins. Co.*, 894 S.W.2d 624, 627 (Ky. 1995); *Miller v. Johnson Controls, Inc.*, 296 S.W.3d 392, 397 (Ky. 2009). "At its most basic level, procedural due process ensures that one is not unfairly deprived of life, liberty, or property without receiving a hearing, adequate notice, and a neutral adjudicator." *White v. Boards-Bey*, 426 S.W.3d 569, 574 (Ky. 2014). In contrast, substantive due process "is based on the idea that some rights are so fundamental that the government must have an exceedingly important reason to regulate them, if at all." *Miller*, 296 S.W.3d at 397. Appellants' argument that the General Assembly lacks authority to revive expired causes of action thus invokes substantive rather than procedural due process.

---

would violate Section 1 of the 14th Amendment to the Constitution of the United States and therefore must be deemed void as depriving one of property without due process of law." The case did not involve a statute of limitations defense, but rather a defense arising from cessation of corporate existence. Unlike the present case, it also addressed federal constitutional limitations rather than limitations arising from the Kentucky Constitution. In any event, its statement of federal law was and remains incorrect, given that nine years earlier the United States Supreme Court had expressly held that "certainly it cannot be said that lifting the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is per se an offense against the Fourteenth Amendment." *Chase Secs. Corp. v. Donaldson*, 325 U.S. 304, 316 (Ky. 1945).

30

In considering constitutional challenges, I begin as always with the "strong presumption . . . in favor of the statute's constitutionality" and by recognizing that "an act should be held valid unless it clearly offends the limitations and prohibitions of the Constitution." *Stephens*, 894 S.W.2d at 626. Where the statute is alleged to violate constitutional substantive due process limitations, the level of scrutiny we apply depends on the nature of the statute's effects. If the challenged legislation significantly interferes with the exercise of a fundamental right, we apply strict scrutiny. *Vision Mining, Inc. v. Gardner*, 364 S.W.3d 455, 466 n.25 (Ky. 2011). That is, we will uphold the statute only if it "furthers a compelling governmental interest and is narrowly tailored to that interest." *Beshear v. Acree*, 615 S.W.3d 780, 816 (Ky. 2020). For other types of legislation, we apply ordinary scrutiny and thus uphold the statute so long as it is "rationally related to a legitimate state objective." *Stephens*, 894 S.W.2d at 627.

In the present case, KRS 413.249's claim-revival provision satisfies even the higher bar of strict scrutiny review.[17] The claim-revival provision undoubtedly serves a compelling governmental interest in providing victims of childhood sexual abuse an avenue for justice and compensation. The statute of limitations frequently operates as an unjust inhibition to the pursuit of such

---

[17] As noted above, one's interest in a statute of limitations defense is in the nature of a property interest. Case law strongly suggests it therefore does not constitute a fundamental right warranting the application of strict scrutiny. *See Beshear*, 615 S.W.3d at 816 ("[P]roperty rights, while enumerated in the Kentucky Constitution, have never been regarded as fundamental rights impervious to any impingement by the state except for restrictions that can pass strict scrutiny.").

claims. The holder of such a claim is by definition young—often very young—when the misconduct occurs, and thus frequently lacks either the psychological maturity or the legal and real-world sophistication necessary to begin pursuing justice and compensation in the courts. These obstacles are often only further compounded by the victim's conflicted feelings, even as an adult, over whether or not to pursue claims against a perpetrator who is often well-known to her, and at times a relative or even a parent. Yet, despite these overwhelming obstacles arising solely from the youth of the victim, and through no fault of her own, she is nonetheless often denied any chance to present her claims—much less to receive justice or compensation—before a court of law due solely to the legal technicality of an expired statute of limitations. In such circumstances, the victim of childhood sexual abuse is denied justice, compensation, or an ability to hold the perpetrator accountable, while the perpetrator enjoys the windfall of freedom from civil liability due solely to the passage of time.

I easily conclude that the claim-revival provision thus serves a compelling governmental interest in ensuring that childhood sexual abuse victims are afforded a fair and reasonable opportunity to pursue justice and compensation. I likewise conclude the statute is narrowly-tailored to serve that interest, particularly as it limits the claim-revival period to a narrow five-year window. *See* KRS 413.249(7)(b) (allowing revived claims to be brought only "within five (5) years of the date on which the applicable statute of limitations

32

expired."). I therefore perceive no violation of substantive due process in the claim-revival provision.

My conclusion today is founded upon fundamental considerations of justice, due process principles, and the exceptionally unique circumstances presented by adult survivors of childhood sexual abuse faced with claims otherwise extinguished solely by operation of the statute of limitations. It is difficult if not impossible to conceive of other circumstances in which the need to remedy overwhelming injustice by revival of expired statutes of limitation might constitute a compelling or even legitimate state objective. That said, the present case clearly does present such circumstances, and I thus perceive no constitutional impediment to enforcement of the claim-revival provision.

Killary had five years from her eighteenth birthday in 2009 to bring her claims, under both the statute of limitations then in effect and under the subsequent 2013 amendment to that statute. KRS 413.249(2)(c) (2007 amend.); KRS 413.249(2)(c) (2013 amend.). Those claims therefore expired five years later in 2014. The 2021 amendment revived those claims, allowing them to be brought "if commenced within five (5) years of the date on which the applicable statute of limitations expired." KRS 413.249(7)(b). Thus, under the claim-revival provision Killary had until 2019 to file her claims. Her Complaint was filed in 2018, and I would thus conclude her claims may now be deemed timely.

COUNSEL FOR APPELLANT,
LINDA THOMPSON:

Carol Schureck Petitt
Vaughn Petitt Legal Group, PLLC

COUNSEL FOR APPELLANT,
RICK JACKMAN:

William H. Brammell, Jr.
Kayla M. Campbell
J. Kent Wicker
Wicker/Brammell PLLC

COUNSEL FOR APPELLANT,
CITY OF LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT:

Kristie Babbitt Walker
Kathryn Delaine Meador
Jefferson County Attorney's Office

COUNSEL FOR APPELLEE:

Lindsy Lopez
Tad Thomas
Thomas Law Offices, PLLC

COUNSEL FOR AMICUS, AMERICAN
ASSOCIATION FOR JUSTICE:

Joshua D. Hicks
Hicks & Funfsinn, PLLC


COUNSEL FOR AMICUS, CHILD USA:

John Abaray
Abaray Craddock & Smith, PLLC

COUNSEL FOR AMICUS, EXECUTIVE
COMMITTEE OF THE SOUTHERN BAPTIST:

John O. Sheller
Kirby Black
Steven T.Clark
Stoll Keenon Ogden

COUNSEL FOR AMICUS, KENTUCKY JUSTICE
ASSOCIATION:

A. Nicholas Naiser
Naiser Law Office

COUNSEL FOR AMICUS, LIFEWAY
CHRISTIAN RESOURCES:

Stewart C. Burch
Logan Burch & Fox, PLC

COUNSEL FOR AMICUS, SOUTHERN
BAPTIST CONVENTION:

Bryan H. Beauman
Sturgill, Turner, Barker & Moloney, PLLC


COUNSEL FOR AMICUS, SOUTHERN
BAPTIST THEOLOGICAL SEMINARY:

Bryan E. Leet
Sharon L. Gold
Thomas E. Travis
Wyatt Tarrant & Combs,